**KENT HOMES, INC.,**
**Plaintiff-Appellee,**

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

**No. 74–1333.**

United States Court of Appeals,
Tenth Circuit.

Submitted Jan. 21, 1975.

Decided March 12, 1975.

Howard A. Spies of Schroeder, Heeney, Groff & Spies, Topeka, Kan., for plaintiff-appellee.

F. Arnold Heller, Atty., Tax Div., Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews and Elmer J. Kelsey, Attys., Tax Div., Dept. of Justice, and Robert J. Roth, U. S. Atty., of counsel, on the brief), for defendant-appellant.

Before BREITENSTEIN, HOLLOWAY and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is a suit for refund of federal income taxes. The question is whether receipts from a federal condemnation were taxable in 1962 or 1963. The government contends that because the taxpayer was on the accrual basis the receipts were taxable in 1962. The district court gave judgment for taxpayer and the government appeals. We affirm.

The taxpayer, plaintiff-appellee Kent Homes, Inc., participated in a Wherry Military Housing Act project at Fort Leavenworth, Kansas. To finance construction it gave notes and a mortgage which were held by New York Life Insurance Company under an assignment. A related corporation, Marshall Homes, Inc., controlled by the same stockholders as taxpayer, had an adjoining Wherry project financed through notes and mortgage assigned to American Irving Savings Bank.

The government brought proceedings to condemn the equities of taxpayer and Marshall, made a deposit of $137,000, and on January 1, 1958, obtained possession under a court order. In March, 1958, taxpayer withdrew its share of the deposit, $83,000. Before the withdrawal, negotiations involving New York Life, the Department of the Army, and the Federal Housing Administration resulted in a three-party agreement whereby Department agreed to assume and pay the mortgage. Taxpayer was not released from its liability under the notes and mortgage.

Taxpayer and Marshall asserted that the condemnation must be against the entire estates and not against the equities alone. In addition they claimed that the value fixed by the government was too low. The court appointed commissioners who made a total award of over $300,000 to both corporations and held that the equities could be condemned.

On December 18, 1961, the government deposited $ 230,400.50 for the joint benefit of taxpayer and Marshall. On the next day the United States Attorney presented a proposed court order authorizing withdrawal. The proposal required signatures for the two corporations and the two mortgagees. The signatures were not obtained until May, 1962. The withdrawal order was signed May 25 and taxpayer withdrew its share. On September 7 the district court held that the government had to condemn the entire estates. On September 26 New York Life released taxpayer from further liablility under the notes and mortgage.

Taxpayer and IRS disputed the tax consequences of the condemnation payments. In resulting litigation the tax court held that the gain from the first deposit was taxable in fiscal 1959. The court of appeals reversed because of the bar of the statute of limitations. Kent Homes, Inc. v. Commissioner of Internal Revenue, 10 Cir., 455 F.2d 316. Neither the tax court nor the court of appeals considered the taxability of the gain represented by the 1961 deposit.

In its 1963 return taxpayer reported the gain from the 1961 deposit. The Commissioner of Internal Revenue assessed additional taxes on the ground that the proceeds from the 1961 deposit were taxable in the fiscal year ending January 31, 1962. Taxpayer paid the assessment of $21,226.67 and brought this suit to recover. The district court held for the taxpayer that the taxable event occurred in fiscal 1963.

Taxpayer is on an accrual basis with a fiscal year ending January 31. If the second deposit on December 18, 1961, is

the taxable event the taxable income was received in fiscal 1962. If that event did not occur until the May 1962 order and withdrawal the taxable event was in fiscal 1963. Because taxpayer had credit for operating losses, no tax was attributable to the gain as reported for fiscal 1963.

Section 446(c)(2), 26 U.S.C., permits the accrual method of accounting. IRS regulations provide, 26 CFR § 1.446–1(c)(ii), that:

"Generally, under an accrual method, income is to be included for the taxable year when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy."

■ Right to receive, rather than actual receipt, determines inclusion in gross income. Spring City Foundry Co. v. Commissioner of Internal Revenue, 292 U.S. 182, 184, 54 S.Ct. 644, 78 L.Ed. 1200. In United States v. Harmon, 10 Cir., 205 F.2d 919, 920, we said that: "When the right to receive income becomes fixed and absolute, the duty of one on the accrual basis to report it arises."

The government argues that taxpayer had the right to the money when it was deposited with the court in December, 1961, and this event is determinative even though taxpayer did not have the use of the money until the following May. The contention requires further examination of the record.

Before the condemnation proceedings the Department of Justice wrote the United States Attorney at Topeka, Kansas, that no distribution of deposited funds should be made until the rights of the mortgagees were made clear. The letter pointed out the limited assets of taxpayer and Marshall. After the December, 1961, deposit the United States presented a proposed order for withdrawal. The proposal required the signatures for the two corporations and the two mortgagees. Taxpayer made efforts to obtain the signatures and its counsel went to New York in an effort to persuade American Irving to sign. The required signatures were not obtained until May, 1962.

■ Under the regulation and our Harmon decision, 205 F.2d at 920, the taxable event occurs when the right to receive income becomes fixed and absolute. When the government made the deposit the right was inchoate because of the intransigent position of the government requiring approval of the withdrawal by the two corporations and the two mortgagees. The deposit was the beginning step. The second step, power to withdraw, did not occur until the government imposed conditions were satisfied. The right was not fixed until the completion of the second step.

We see no significance in the fact that the reluctant signer, American Irving, held its mortgage on properties taken from Marshall. The government made a joint deposit and did not change its proposed withdrawal order to eliminate the need for approval by American Irving.

The trial court found that taxpayer "made every reasonable effort to try to get the deposit released to it, because no interest was accruing on this considerable sum while it was on deposit with the Court." The court also said that until all parties approved the proposed withdrawal order "this Court would not have signed and entered it."

In effect the government says that the conditions which it imposed were of no importance and did not determine the occurrence of the taxable event. We are not impressed by the shift in position. For reasons which it thought sufficient the government conditioned the right to the money. It would now ignore those conditions. We are convinced that the right did not become fixed until the conditions were satisfied. Accordingly, the income was received in fiscal 1963.

Affirmed.