SNYDER AIR PRODUCTS, INC., PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3486–75, 8211–75.     Filed January 29, 1979.

*Dante M. Scaccia,* for the petitioner.
*David R. Smith,* for the respondent.

DRENNEN, *Judge:* In these consolidated cases respondent determined deficiencies and additions to tax as follows:

| Docket No. | Year | Deficiency | Addition to tax, I.R.C. 1954[1] | |
|---|---|---|---|---|
| | | | Sec. 6651(a) | Sec. 6653(a) |
| 8211–75 | FYE 5/31/68 | $37,748.78 | $9,437.19 | $1,887.44 |
| 3486–75 | FYE 5/31/70 | 6,175.87 | 1,543.97 | --- |

Several of the issues relative to the deficiencies have been settled by stipulation of the parties. The issues remaining for our resolution are:

(1) Whether a condemnation award from the State of New York accrued during petitioner's fiscal year ending May 31, 1968. If not, whether it accrued during petitioner's fiscal year ending May 31, 1970.[2]

(2) Whether deductions claimed by petitioner during the taxable years at issue for compensation of officers, bad debts, interest, automobile expense, travel and entertainment expenses, legal and professional fees, and miscellaneous expenses are ordinary and necessary business expenses.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue, unless otherwise specified.

[2] Respondent amended his answer to allege alternatively that the gain realized from the award is accruable during petitioner's fiscal year ending May 31, 1970.

(3) Whether a carryforward of a net operating loss deduction to fiscal year ending May 31, 1968, was proper, and

(4) Whether the additions to tax pursuant to sections 6651(a) and 6653(a) are properly imposed.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Snyder Air Products, Inc. (hereinafter petitioner), was incorporated under the laws of the State of New York on May 25, 1953. Petitioner's income tax return for its fiscal year ending May 31, 1968, was filed with the District Director of Internal Revenue, Buffalo, N.Y., on June 19, 1969. The return for its fiscal year ending May 31, 1970, was filed with said District Director of Internal Revenue on February 18, 1972.

At the time it filed the petitions in these cases, petitioner's legal address was in Syracuse, N.Y.

From the date of its incorporation until October 28, 1963, petitioner was engaged in carrying on the trade or business of manufacturing and selling medical gases and compressed industrial gases. On October 28, 1963, petitioner sold substantially all of its corporate assets to the Burdette Oxygen Co. (hereinafter referred to as Burdette). Most of the assets sold were cylinders manufactured by petitioner to contain the gases produced by petitioner, but did not include petitioner's plant or the machinery and equipment used to manufacture the cylinders. The agreement of sale, the bill of sale, and the chattel mortgage securing the buyer's promissory note provided in pertinent part:

The quantities and extended prices shown above indicate cylinders owned by Seller as of the date of execution of this agreement pursuant to its record of purchases thereof and its best estimate. The parties agree that in order to determine the final price of these cylinders a joint physical inventory is to be made and completed over a fifteen month period following the Closing Date. The physical inventory, when completed, shall be certified to by the parties and when so certified shall determine the purchase price of these cylinders.

The inventory was necessary because the cylinders manufactured by petitioner were dispersed to the various institutions and industries which were petitioner's customers. The inventory was conducted by Ephraim Snyder, petitioner's president, as the cylinders were returned to the plant for refilling.

On October 28, 1963, petitioner and Burdette were aware that

the real estate upon which petitioner's manufacturing plant and warehouse was located in Syracuse was scheduled to be appropriated by the State of New York for highway purposes at some future date. In anticipation of this appropriation, petitioner and Burdette entered into a lease agreement renewable annually whereby Burdette leased petitioner's oxygen-producing plant and warehouse, the lease automatically terminating upon the taking of possession of the building by the State of New York pursuant to any appropriation of the building for highway purposes. On October 28, 1963, petitioner and Burdette also executed an "Agreement for Option to Purchase Manufacturing Equipment" whereby petitioner granted Burdette an option to purchase petitioner's manufacturing equipment for $10,000. The option was exercised by Burdette and payment of $10,000 made at some unspecified time between June 2, 1965, and May 29, 1968.

Subsequent to October 28, 1963, petitioner has not carried on any business operations; petitioner's principal activities consisted of carrying out the sale of its corporate assets pursuant to the agreement of sale and contesting the amount of a condemnation award against the State of New York.

On June 2, 1965, the State of New York appropriated the real property and plant equipment in Syracuse on which petitioner's business had been situated pursuant to section 30, N.Y. Highway Law (McKinney 1962). The appropriated property was valued by the State as follows: $95,000 for the real estate and $43,228 for the plant equipment.

Petitioner filed a claim contesting the amount of the condemnation award with the Court of Claims of the State of New York on March 8, 1966.

The Court of Claims entered its decision on May 29, 1968, in which it concluded in pertinent part:

Claimant has been damaged in the total sum of $159,988.00 as follows: (a) Land—$41,760.00; (b) Building—$85,000.00; and (c) compensable fixtures and equipment—$33,228.00.

The claimant paid real estate taxes on the property appropriated for the year 1965 and is entitled to be reimbursed the sum of $1,166.95.

\* \* \* \* \* \* \*

Claimant is entitled to an award in the sum of $159,988.00 for all damages plus the sum of $1,166.95 for taxes paid by the claimant for a total of $161,154.95 with interest thereon from June 2, 1965 to December 2, 1965 and from March 8, 1966 to the date of entry of judgment herein.

An appeal was taken by the State of New York from the Court of Claims' judgment to the Appellate Division of the Superior Court, State of New York, Fourth Department. The Court of Claims judgment was unanimously affirmed on December 4, 1969. On February 12, 1970, the Appellate Division denied the State of New York's motion for reargument of appeal or, in the alternative, for leave to appeal to the Court of Appeals of the State of New York. The Court of Appeals denied the State's motion for leave to appeal to that court on April 9, 1970.

In the meantime, the New York State Department of Audit and Control mailed to petitioner the following payments toward the condemnation award:

| Date | Amount |
|------|--------|
| Nov. 24, 1965 | $79,630.82 |
| Sept. 16, 1966 | 10,000.00 |
| Oct. 16, 1968 | 16,898.80 |

These payments were made pursuant to the provisions in section 30(13), N.Y. Highway Law (McKinney 1962), requiring in the event of the filing of a claim with the Court of Claims that the superintendent of public works offer and if accepted pay to the claimant 60 percent of the amount determined by the superintendent to be the value of the claim plus interest.[3]

Prior to issuance of the final payment to petitioner under the condemnation award, the New York State Department of Transportation, Real Property Division, issued a voucher to petitioner dated May 21, 1970, indicating that the final payment under the award would be in the amount of $87,497.67. This voucher was signed by Ephraim Snyder on behalf of petitioner. On June 8, 1970, after the required administrative procedures had been completed, the Department of Audit and Control mailed to petitioner's attorney a check in the amount of $87,497.67 as final payment of the balance due petitioner under the condemnation proceeding.

On June 17, 1970, Lawrence H. Gingold, petitioner's attorney in the litigation with the State of New York, prepared for petitioner an itemized statement showing the total amount of the award paid by the State of New York, the amount of the

[3]The record does not disclose how these payments were computed.

final payment, and the net amount to be received by petitioner. The itemized statement reads in pertinent part:

Received payment this *17th* day of June, 1970 from Lawrence H. Gingold * * * of the sum of $73,077.28 in full settlement of the above matter. The following deductions are authorized, ratified and approved:

| | |
|---|---:|
| Bernard LaVine for appraisal services | $3,500.00 |
| Lawrence H. Gingold, for attorney's fees and disbursements ($1,800.00 of the sum shown previously paid in 1968) | 12,720.39 |

SNYDER AIR PRODUCTS CO., INC.
by (S) EPHRAIM SNYDER
*President*

Petitioner, who uses the accrual method of accounting, did not report the gain realized from the condemnation award on its income tax returns for its fiscal years ending May 31, 1968, or May 31, 1970. Petitioner has never filed an income tax return for its fiscal year ending May 31, 1971.

In his notice of deficiency for petitioner's fiscal year ending May 31, 1968, respondent determined:

(b) It has been determined that you received additional income from an increase in a condemnation award during the year ended May 31, 1968. In accordance with Section 61 of the Code, your income is increased by the taxable portion of this award. The following is a breakdown of these amounts:

| | | | |
|---|---|---|---:|
| 1. Capital gain on building and land | | | $72,106.16 |
| 2. Capital gain on machinery and equipment | | | 25,803.90 |
| 3. Ordinary income on machinery and equipment | | | 7,424.10 |
| 4. Interest income from award | | | 22,872.34 |
| 5. Reimbursed taxes per judgment | | | 1,166.95 |
| Total | | | 129,373.45 |

Computations of items 1–3 are as follows:

| | | | |
|---|---:|---:|---:|
| (b) 1. Section 1321 gain on building and land | | | 72,106.16 |
| Received per judgment | | | |
| Building | $85,000.00 | | |
| Land | 41,760.00 | | 126,760.00 |
| Basis | | | |
| Land | | $14,000.00 | |
| Building | 70,026.85 | | |
| Less Depreciation | 29,373.01 | 40,653.84 | 54,653.84 |
| Gain—section 1231 of Internal Revenue Code | | | 72,106.16 |

2. Section 1231—gain on machinery and equipment ............ 25,803.90

| | | |
|---|---|---|
| Received per judgment | 33,228.00 | |
| Received from Burdette Co. | 10,000.00 | 43,228.00 |
| Adjusted basis | | 7,014.26 |
| Total gain | | 36,213.74 |
| Ordinary income under section 1245 of the Internal Revenue Code | | 10,409.84 |
| Gain-section 1231 of the Internal Revenue Code | | 25,803.90 |

3. Section 1245—ordinary gain machines

| | |
|---|---|
| and equipment | 7,424.10 |
| Depreciation claimed after 12/31/61 | 10,409.84 |
| Ordinary income previously reported | 2,985.74 |
| Additional gain—section 1245 of the Internal Revenue Code | 7,424.10 |

Respondent amended his answer in docket No. 3486–75 to allege in the alternative that:

if the additional income from said condemnation award is not taxable to petitioner in the taxable year ended May 31, 1968, * * * then said additional income is taxable to petitioner in the taxable year ended May 31, 1970.

* * * As to the amount of said additional income which will form the basis of the increased deficiency in this case, respondent adopts the figures contained in adjustment (b) of his notice of deficiency * * * upon which Docket No. 8211–75 is based, and incorporates said notice of deficiency herein by reference.

On its return for the fiscal year ending May 31, 1968, petitioner claimed deductions of $3,000 for bad debts, $250 for interest, $2,000 for legal and professional fees, and $450 for miscellaneous expenses. These expenses were disallowed in the notice of deficiency for lack of substantiation as to payment and for failure to establish that they were ordinary and necessary business expenses of petitioner.

Petitioner also claimed a net operating loss carryforward of $1,805.69 on its return for the fiscal year ending May 31, 1968. The net operating loss was carried forward from the fiscal year ending May 31, 1963. In the notice of deficiency, respondent disallowed this deduction for lack of substantiation which would permit its deduction under section 172 of the Internal Revenue Code.

On its return for the fiscal year ending May 31, 1970, petitioner claimed deductions of $1,100 for interest which was disallowed by respondent in the notice of deficiency for lack of

substantiation. Petitioner also deducted $6,000 for officer compensation, $161.72 for automobile expense, and $195.43 for travel and entertainment. These deductions were disallowed in the notice of deficiency as not being ordinary and necessary business expenses of petitioner.

For 6 to 10 years previous to trial, Ephraim Snyder had been suffering from a heart condition which has necessitated two or three major operations. At the time of trial he apparently was ill with cancer.

### ULTIMATE FINDINGS OF FACT

During petitioner's taxable year ended May 31, 1970, all events had occurred which fixed petitioner's right to receive the condemnation award from the State of New York and the amount thereof could be determined with reasonable accuracy.

Petitioner's failure to timely file its income tax returns for its taxable years ending May 31, 1968 and 1970, was not due to reasonable cause.

The underpayment of tax required to be shown on petitioner's return for its taxable year ended May 31, 1968, was not due to petitioner's negligence or its intentional disregard of rules and regulations.

### OPINION

The fiscal year during which the condemnation award from the State of New York to petitioner accrued is the primary issue confronting us.[4]

A taxpayer using the accrual method of accounting must include amounts in gross income "when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy." Sec. 1.451–1(a), Income Tax Regs.

It is petitioner's position that its right to the condemnation award was not fixed until its fiscal year ending May 31, 1971, nor was the amount of the award ascertainable until that fiscal year. Respondent argues that the award accrued no later than

---

[4]Petitioner does not challenge the computation of gain made by respondent in the notice of deficiency and neither party argues that portions of the award accrued in fiscal years prior to fiscal year ending May 31, 1968. Cf. *Kent Homes, Inc. v. United States,* 512 F.2d 395 (10th Cir. 1975). Nor does petitioner contest the taxability of the gain. See *North American Oil Consolidated v. Burnet,* 286 U.S. 417 (1932).

May 29, 1968; the date the decision of the Court of Claims was entered, and, hence, is includable in gross income for the fiscal year ending May 31, 1968. Alternatively, respondent contends that the award accrued no later than May 21, 1970, the date on which the Department of Transportation, Real Property Division, issued the voucher setting forth the exact amounts of the award and the final payment. Therefore, the award is includable in gross income for the fiscal year ending May 31, 1970.

That petitioner's fiscal year ending May 31, 1968, is not the taxable year in which to include the condemnation award is clear. By statute the State of New York had the right to appeal the adverse decision of the Court of Claims which right the State exercised. Sec. 24, Court of Claims Act (McKinney 1963). A perusal of the Court of Claims decision reveals that the fact of liability on the part of the State was certain. The amount of the award allocable to the manufacturing equipment was still in doubt, however, by reason of the appeal. Respondent's contention that the appeal was frivolous and therefore may be disregarded as an impediment to inclusion is an exercise of hindsight with no foundation in the record. Consequently, the test set forth in section 1.451–1(a), Income Tax Regs., was not satisfied by the close of petitioner's fiscal year ending May 31, 1968. See *Patrick McGuirl, Inc. v. Commissioner*, 74 F.2d 729 (2d Cir. 1935), affg. a Memorandum Opinion of this Court.

Inclusion of the award in petitioner's fiscal year ending May 31, 1970, is based upon the facts that the judgment of the Court of Claims had been affirmed and further appeal denied before the close of that taxable year. Therefore, respondent argues, all the events had occurred which fixed petitioner's right to the income. And, even though actual payment of the balance owing petitioner plus interest was not made by the State until June 8, 1970, the State had issued a voucher to petitioner for the exact amount of the balance owing plus interest on May 21, 1970. Hence, the amount of income was ascertainable with reasonable certainty prior to the close of the taxable year.

We agree with respondent. Petitioner's argument that inclusion was delayed until the fiscal year ending May 31, 1971, because certain administrative procedures are conditions precedent to payment of the judgment of the Court of Claims is specious. He points to section 20, Court of Claims Act (McKinney 1963) which provides:

No such judgment shall be paid until there shall be filed with the comptroller a copy thereof duly certified by the clerk of the court of claims together with a certificate of the attorney-general that no appeal has been or will be taken by the state from the judgment or part thereof specified in the certificate, and a release and waiver by the attorney for the claimant of any lien for services upon said claimant's cause of action, claim, award, verdict, report, decision or judgment in favor of said claimant, which said attorney may have thereon under and by virtue of section four hundred and seventy-five of the judiciary law; and where an award is made by reason of the appropriation of land or any interest therein for a public use or for damages to land caused by the state, there shall also be filed with the comptroller, a satisfactory abstract of title and certificate of search as to incumbrances, showing the person demanding such damages to be legally entitled thereto.

Although we have no record of when these procedures were completed by the State and Gingold, we do not feel that this evidentiary gap is important. The accrual method of accounting has nothing to do with payment as such. The conditions precedent to proper accrual of income are a fixed right to receive the income and a reasonably certain forecast of its amount. Both of these conditions were satisfied by May 21, 1970. *Patrick McGuirl, Inc. v. Commissioner, supra; Koppers Co. v. Commissioner*, 3 T.C. 62 (1944); *General Baking Co. v. Commissioner*, 48 T.C. 201 (1967).

Petitioner's further contention that the amount of the award was not ascertainable prior to the close of the fiscal year ending May 31, 1970, because Gingold's fees had not been computed or paid until June of 1970 again indicates a misunderstanding of accrual accounting. All of the figures necessary to compute the attorney's fees were available to petitioner on May 21, 1970. What petitioner owed Gingold for his services is an entirely separate question from what the State owed petitioner for the appropriation. That Gingold waived his statutory lien on the judgment is inferable from the fact that the voucher was issued in exactly the same amount as that of the balance owing petitioner on the judgment.

Consequently, we agree with respondent's allegations in his amended answer and conclude that the gain realized on the condemnation award was taxable to petitioner in its fiscal year ending May 31, 1970.

Turning to the deductions claimed by petitioner on its return for the fiscal year ending May 31, 1968, for bad debts, interest, legal and professional fees, and miscellaneous expenses, we find that petitioner has failed totally to substantiate their amounts

or that they were ordinary and necessary business expenses of petitioner. Petitioner's only witness, David Bloom, did not know what the expenses were for and no documentary evidence pertaining to these expenses was introduced. We are no more enlightened concerning these deductions now than we were prior to commencement of trial.

This conclusion holds true for respondent's disallowance for lack of substantiation of the net operating loss carryforward claimed by petitioner on its return for the fiscal year ending May 31, 1968. Bloom's testimony with regard to this deduction consisted of a recitation of the computation attached to the tax return. He had no independent recollection that a net operating loss had been sustained in 1963 and, again, no documentary evidence establishing the fact or amount of that loss or of the income or loss of the corporation for the years 1964–67 was introduced.

Upheld as well and for the same reasons is respondent's disallowance for lack of substantiation of the deductions for $1,100 interest expense claimed by petitioner on its return for the fiscal year ending May 31, 1970.

The disallowance of the deductions claimed on the return for the fiscal year ending May 31, 1970, for compensation of Ephraim Snyder, automobile expense, and travel and entertainment expense as not being ordinary and necessary business expenses of petitioner, is also upheld. Other than Bloom's testimony that Snyder traveled to conduct the cylinder inventory at some unspecified time, there is no evidence in the record which supports allowance of the deduction. Apparently, the cylinder inventory had been completed long before the taxable year at issue. We have no evidence of what Snyder's duties, responsibilities, or activities were in fiscal 1970, except that he was in poor health. We note that no deduction was claimed on petitioner's return for fiscal 1968 for compensation paid to Snyder. Petitioner's reliance upon the testimony of an outsider to its activities and general statements on brief are not sufficient to overcome respondent's determination.

Finally, we turn to the additions to tax determined by respondent pursuant to sections 6651(a) and 6653(a) for the taxable years at issue. Petitioner's brief and undetailed statement that Snyder's illness prevented him from filing timely returns is inadequate to overcome respondent's determination.

*Williams v. Commissioner,* 16 T.C. 893 (1951). Consequently, the additions to tax under section 6651(a) are properly imposed. We assume that respondent's assertion of the addition to tax for negligence under section 6653(a) for fiscal year 1968 was based primarily on petitioner's failure to report the gain on the condemnation award in that year. Since we have concluded that the gain was not taxable in that year, and respondent has conceded certain other adjustments for that year, and we do not believe that any of the remaining adjustments for the year 1968 would justify assertion of the addition to tax under section 6653(a), such addition to tax is denied. The addition to tax under section 6653(a) was not asserted for 1970.

The parties stipulated certain of the adjustments in the notices of deficiency. Respondent recognizes that if we conclude that the gain on the condemnation is taxable in fiscal 1970 the deficiency determined for fiscal 1968 will have to be adjusted as well as the additions to tax for both years. To permit all such adjustments—

*Decisions will be entered under Rule 155.*