MICHAEL C. TOTIN AND DANA E. TOTIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Totin v. Commissioner
Docket No. 9164-83.
United States Tax Court
T.C. Memo 1984-603; 1984 Tax Ct. Memo LEXIS 66; 49 T.C.M. (CCH) 122; T.C.M. (RIA) 84603; November 20, 1984. Michael C. Totin, pro se. Gary A. Benford, for the respondent. KORNER MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency in Federal income tax against petitioners for the taxable year ended December 31, 1980 in the amount of $69.73. In his amended answer filed on May 15, 1983, respondent alleged that the deficiency had been understated in the statutory notice of deficiency by $137.34, due to a mathematical error; the deficiency was increased *68 to $207.07. [1] No reply being filed by petitioner, affirmative allegations in the answer are deemed denied. Rule 37(c). [2] While petitioners have the burden to prove that the original deficiency as determined by respondent in the statutory notice (67.93) is improper, respondent has the burden to prove that the increase in the deficiency ($137.34) is proper. Rule 142(a). After concessions, the issues for decision are: [3] (1) Whether petitioners are entitled to a casualty loss deduction in the amount of $435; (2) whether petitioners are entitled to miscellaneous itemized deductions totalling $2,070; (3) whether petitioners are entitled to an employee business expense deduction in excess of the $460.36 allowed by respondent; (4) whether petitioners are entitled to a net long-term capital loss deduction in the amount of $393.36; (5) whether respondent's claim for an increased deficiency is correct. *69 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Michael C. Totin (hereinafter referred to as "petitioner") and Dana E. Totin (hereinafter referred to, collectively, as "petitioners") were husband and wife and residents of Blue Ridge, Texas, at the time of filing their petition in this Court. Petitioners timely filed a joint Federal income tax return for the taxable year ended December 31, 1980 with the Internal Revenue Service Center in Austin, Texas. Issue 1. Casualty loss
Petitioners claimed a casualty loss deduction in the amount of $435 on their Schedule A, attached to form 1040, as follows: Loss before insurance reimbursement
$535.00 Less: Insurance reimbursement
(0.00)
Balance
$535.00 Less $100
(100.00)
$435.00 This deduction consisted of deductions for two separate events: A loss resulting from damage to an automobile and the loss of a wedding ring. Respondent disallowed the deduction in full. a. Damage to the automobile
Petitioner bought a new Pontiac, *70 Grand Prix, with a vinyl roof covering approximately a quarter of the back of the car, in 1976. According to petitioner, the vinyl roof ripped off while he was driving down the parkway in Pittsburgh one day in 1980. Petitioner testified that "[T]he weather in Pittsburgh is known to be sort of decrepit, so it has a tendency to make things not as new as they should be. It later -- it didn't peel off entirely. It was there for a while and then I ripped it the rest of the way off, causing further damage. However, it would have been a hazard for me to drive, not being able to see out of my rearview mirror, so I ripped it off and left it off." This loss was not covered by insurance. In the fall of 1982, petitioner obtained an estimate of the cost of replacing the vinyl top of the car from Airport Pontiac-Toyota, Inc. in Coraopolis, Pennsylvania. The estimated cost of replacing the vinyl top was $343.02. b. Loss of the wedding ring
Petitioner purchased a diamond ring, which he gave to his wife as a wedding present, in 1978. Petitioner paid in cash for the ring and did not obtain a receipt. Petitioner could not recall whether he had paid $235 or $335 for the *71 ring. On his tax return petitioner claimed a $300 value. Petitioner's wife lost the ring at a shopping center. The loss was not covered by insurance. Petitioners placed a classified ad in the newspaper offering a reward for the recovery of the ring. A man, who refused to identify himself, called petitioner's wife, described the ring, and proceeded to inquire about the reward.Petitioner's wife advised the man to call at a time when her husband would be at home, noting that he could settle the details about the reward. The man called the next day and told petitioners that they were not going to get the ring back. Issue 2. Miscellaneous itemized deductions and Issue 3. Employee business expenses
Petitioner claimed miscellaneous deductions as follows: Union dues
$412.00
Oil & gas Lease Lottery
319.00
Two tax books & Advice
31.00
Preparation/Duplication of Tax Records
3.00
Form 2106, Part II
1,305.00
Total
$2,070.00
The portion of the miscellaneous deductions from Form 2106, Employee Business Expenses, consisted of the following: Claimed
Allowed
Uniform & Maintenance
$390.00
$120.00
Professional Equipment
214.00
93.85
Required Physical
58.00
59.00
Beeper & Phone Service
643.00
793.42
Total
$1,305.00
$1,066.27
*72 Petitioner contends that the entire amount of $390 claimed as uniform and maintenance in Form 2106 should be allowed. Included in uniform & maintenance are amounts paid for haircuts and razor blades. In support of his contention that he is entitled to deduct the amounts so spent, petitioner testified that "as a normal person, [he] would not be getting haircuts like everyone else, so [he] did not consider that [a] personal expense." According to petitioner, the only reason why he had his hair cut was because his employer, Allegheny Airlines, required, as company policy, that its employees maintain hair lengths above the shirt collar. [4] Petitioners' only evidence that the expenses claimed had been incurred was a document entitled "Summary of Expenses per Flight Log," prepared by Max Richardson, a CPA, in 1982, based on petitioner's notes contained in his flight log. The flight log contained no receipts, and was not offered in evidence. Also deducted as uniform & maintenance were a pair of black boots. Petitioner testified that his employer allowed its employees to use boots when flying. The *73 boots were wearable on the street. In addition, petitioner claimed the amount of $192 as employee business expenses, deductible in figuring adjusted gross income. Included therein were amounts paid or incurred by petitioner for meals and lodging while away from home in connection with the performance by him of services as an airline pilot for Allegheny. The following chart reflects the amounts claimed by petitioner, the concept for which the amounts were claimed, and the amounts allowed by respondent: Claimed
Allowed
Meals
$1,734.59 $1,734.59 Telephone
214.44 Taxi & Transportation
203.14 203.14 Miscellaneous expenses
535.70 Undetermined
[5] 46.00 Total
$2,687.87 $1,983.73 Reimbursed by Employer
(1,715.37)
(1,715.37)
Difference
$972.50 [6] $268.36 Petitioner contends here that the telephone expense in the amount of $214.44 and the miscellaneous expenses in the amount of $537.70 should be allowed. *74 Presumably, these amounts ought to be reduced to reflect the concession made by respondent in the amount of $46. Petitioner also claims that he should be allowed to deduct the amounts in excess of the $44 a day that were reimbursed to him by his employer, $172.88. In support of his contention, petitioner refers us again to the "Summary of Expenses per Flight Log" prepared by Mr. Richardson. Petitioner testified that the telephone expenses were incurred in the course of his "trying to get a trip for the following day when [he] was not scheduled, talking to the people to resolve conflicts and informing them that [he] was out of time." Petitioner did not provide any receipts to justify these expenses. The miscellaneous expenses include things such as shoeshines, overnight expenses, hotels, and laundry. Petitioner did not furnish receipts to substantiate these miscellaneous expenses. Issue 4. Net long-term capital loss deduction
On their Form 1040 for 1980, petitioners claimed a deduction for long-term capital losses in the amount of $1,125. The deduction consisted of losses in the amount of $337 from the disposition of stock and $788 from the disposition *75 of a motorcycle. Respondent disallowed the deduction for the loss on the disposition of the motorcycle. Petitioner bought a 1975 Kawasaki 400 motorcycle, bearing motor vehicle identification number K4S53839, in August of 1975, for which he paid the amount of $835 in cash. Petitioner installed a new battery, wind fairings, and several other items that brought the cost to $988. [7]
In the fall of 1977, petitioner drove the motorcycle to South Carolina. Three days later petitioner returned to Dallas, leaving the motorcycle with a friend, who promised to start it once a week. According to petitioner's testimony, his friend showed the motorcycle to an individual, who stole the battery. [8] The motorcycle could not be started, causing the motor to seize. Petitioner went to South Carolina in September of 1980 to discuss the dale of the motorcycle with John L. Marker, Jr. In his letter, dated May 25, 1983, Mr. Marker stated: "The motor cycle *76 * * * was not worth fixing due to the fact that the engine was completely locked up (The inside was rusted to the point where some of the metal parts were bonded together). The amount of investment required to put the motor cycle in running order exceeded the value of it. Mr. Totin left the motor cycle in my care, which I in turn dispose [sic] of (giving it away as is)." This loss was not covered by insurance. Issue 5. Respondent's claim for increased deficiency
In filing their joint return for 1980, petitioners computed a long-term capital loss of $1,125. In bringing said claimed long-term loss forward to deduct it from their ordinary income, however, petitioners failed to reduce the claimed loss by 50%, thus understating their net taxable income per return. In recomputing the tax in his statutory notice herein, respondent failed to detect this omission: OPINION Issue 1. Casualty loss
Section 165[9] allows a deduction to individuals for losses sustained during the taxable year as a result of fire, storm, shipwreck, other casualty or theft, if and *77 to the extent that each loss exceeds $100 and is not covered by insurance. A. Damage to the automobile
Petitioner contends that his situation falls within the meaning of the term "other casualty." The Courts have defined the term "other casualty" as a loss resulting from an occurrence similar to fire, storm, or shipwreck. Matheson v. Commissioner,54 F.2d 537 (2d Cir. 1931); Durden v. Commissioner,3 T.C. 1 (1944). This loss must arise from an event that is identifiable, damaging to property, sudden, unexpected, and unusual in nature. See White v. Commissioner,48 T.C. 430, 433 (1967); Rev. Rul. 72-592, 1972-2 C.B. 101. This Court has repeatedly held that the term "casualty" excludes the progressive deterioration of property through a steadily operating cause. [10]Fay v. Helvering,120 F.2d 253 (2d. Cir. 1941), affg. 42 B.T.A. 206 (1940); *78 Durden v. Commissioner,supra.
The burden is upon petitioner to show that respondent's determinations are incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). We find difficult to believe petitioner's rendition of the facts. Judges should not be expected to believe what nobody else would believe. A vinyl top does not blow off a car unless there is something wrong. This particular car, including the vinyl roof, was four years old at the time of the alleged accident. It had been subjected to the elements and it is clear to us that its deterioration arose from the effect of the elements rather than from an unusual force acting on Pittsburgh's highways. We note that petitioner's statement that the roof had ripped off while he was driving down the parkway was accompanied by a remark that Pittsburgh's weather tends to make things not as new as they should be. This is not a casualty. *79 The amount of loss deductible under section 165 is the lesser of: (1) the fair market value of the property before the casualty, less the fair market value of the property after the casualty, or (2) the adjusted basis for determining the loss from the sale or other disposition of the property involved. Section 1.165-1(c)(1), Income Tax Regs.; Helvering v. Owners,305 U.S. 468 (1939); Millsap v. Commissioner,46 T.C. 751, 759 (1966), affd. 387 F.2d 420 (8th Cir. 1968). The fair market value of the property immediately before and immediately after the casualty shall generally be ascertained by competent appraisal. The cost of repairs to the property damaged is acceptable as evidence of the loss of value if the repairs are necessary to restore the property to its condition immediately before the casualty, the amount spent for such repairs is not excessive, the repairs do not care for more than the damage suffered, and the value of the property does not as a result of the repairs exceed the value of the property immediately before the casualty. Section 1.165-7(a)(2), Income Tax Regs. *80 [Emphasis added.] In Lamphere v. Commissioner,70 T.C. 391 (1978) we made the following statement: In cases where we have permitted the "cost of repairs" method to be used to ascertain the amount of a casualty loss, the repairs and expenditures were actually made. Cf. Harmon v. Commissioner,13 T.C. 373, 382-383 (1949); Clapp v. Commissioner,36 T.C. 905, 908 (1961), affd. 321 F.2d 12 (9th Cir. 1963). In Farber v. Commissioner57 T.C. 714, 719 (1972), we specifically rejected the use of estimates as not being "persuasive." It was held that the regulation "contemplates actual repairs and expenditures." We think the regulation provides simplicity and ease of administration. It guards against possible abuse that would result from the use of flexible or inflated estimates of repairs, particularly in situations where the repairs are never made. [Lamphere, at 396.] Petitioner has failed to present any evidence regarding the fair market value of the car before and after the alleged casualty, or *81 that repairs were actually made. We hold that petitioner is not entitled to a deduction for the loss of the vinyl top. B. Loss of the wedding ring
That petitioners suffered some loss in 1980 seems reasonably clear. Petitioners, however, have failed to substantiate the amount of any loss that they may have suffered as a result of the loss of the ring. [11] On the evidence before us, we cannot estimate with any degree of certainty the amount of the loss. Cf. Cohan v. Commissioner,39 F.2d 540 (1930). [12] Nor can we find that the loss of the ring was due to theft, rather than accidental loss. Respondent is sustained. Issue 2. Miscellaneous itemized deductions and Issue 3. Employee Business Expense deduction
All deductions from gross income, whether personal or business, must be substantiated pursuant to section 6001.Business expenses *82 are subject to the further substantiation requirements of sections 162 and 274. Section 162(a)(2) allows a deduction for traveling expenses, including amounts expended on meals and lodging while away from home in the pursuit of a trade or business. Section 274(d) provides that no deduction shall be allowed under section 162 or 212 for any traveling expense unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statements the amount, time, place, and purpose of the expense. In order to satisfy this adequate records requirement the taxpayer must maintain an account book, diary, statement of expense or diary made at or near the time of the expenditure, supported by sufficient documentary evidence. Sections 1.274-5(c); 1.162-17(d), Income Tax Regs.; Sanford v. Commissioner,50 T.C. 823 (1968), affd. per curiam, 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841. Petitioner has failed to substantiate *83 his claimed expenditures in excess of those allowed by respondent. Petitioner has no receipts or other documentary evidence to support his alleged flight log entries. [13] Accordingly, his records cannot be considered "adequate." Furthermore, petitioner's brief and undetailed testimony is inadequate to overcome respondent's determination. [14]Snyder Air Products, Inc. v. Commissioner,71 T.C. 709, 718 (1979). Respondent is therefore sustained. Issue 4. Net long-term *84 capital loss deduction
Deductions are a matter of legislative grace. A taxpayer seeking a deduction must be able to pinpoint to an applicable statute and show that he comes within its terms. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Petitioner has failed to demonstrate that a deductible loss occurred. The motorcycle was not property used in his trade or business, nor was it used to produce income. The motorcycle deteriorated over a period of time; this is not a casualty loss. Fay v. Helvering,supra.Nor was this a theft loss. On this issue, we hold for respondent. Issue 5. Respondent's claim for increased deficiency
On this issue, raised by respondent's amended answer, respondent has proved that petitioners' 1980 return, as filed, failed to reduce their claimed long-term capital loss by 50% before deducting it against their ordinary income, and that respondent perpetuated this error in his statutory notice, which recomputed petitioners' taxable income and tax based upon said figures as reported in the return. Based *85 upon the clear requirements of section 1211(b), such adjustment should have been made, and must be given effect in the recomputation of tax which is to be made herein under Rule 155. To reflect concessions made by the parties, Decision will be entered under Rule 155.
Footnotes
1. Respondent's Motion for Leave to File Amendment to Answer was granted on May 15, 1983. ↩
2. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. In their petition to this Court petitioners claimed that respondent's denial of their request to videotape the audit constituted a violation of their constitutional rights. In support of their contention, petitioners argued that the "Congress has never given the IRS the right to approve/disapprove the audible/videotaping of audits." Petitioners also contended that the "graduated tax is unconstitutional as it (G.T.) goes against the basic tenent [sic] and spirit of the constitution in that, 'All men are created equal . . .'" Petitioners did not present any authority in support of their contentions; therefore, we presume that they have conceded these issues. Cf. United States v. Huene,↩     F.2d    , 84-2 USTC par. 9882 (9th Cir. 1984). Furthermore, we refuse to address frivolous tax protester issues, which present no issues of fact. These arguments may be disposed of summarily without scholarly discussion. We also advise petitioners that the assertion of frivolous arguments before this Court will not be tolerated, and can result in a costly folly. Cf. sec. 6673.
4. Petitioner was employed as a pilot by Allegheny Airlines.↩
5. Respondent could not determine from the agent's work papers whether the allowed amount petained to telephone or miscellaneous expenses. ↩
6. This amount was allowed as an additional deduction by respondent.↩
7. Petitioner deducted $200 as depreciation in order to arrive at a $788 loss on his tax return.↩
8. Petitioner did not claim the alleged theft of the battery as a casualty loss. We, therefore, do not address this issue.↩
9. The statutory references herein are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise stated.↩
10. See, e.g., Saccone v. Commissioner,T.C. Memo. 1979-482↩.
11. Petitioner could not recall whether he had paid $235 or $335 for the ring. In his Form 1040, petitioner claimed a $300 value. ↩
12. See, e.g. Veizaga v. Commissioner,T.C. Memo. 1981-663↩.
13. The flight log was not offered in evidence. ↩
14. Even if substantiated, the cost of haircuts and razor blades is not deductible. In Fryer v. Commissioner,T.C. Memo. 1974-26, this Court held that the cost of a commercial airline pilot's haircuts was a nondeductible personal expense, even though airline regulations required pilots to have haircuts on a regular basis. Similarly, the cost of the boots is not deductible as they are suitable for personal or private wear. See, e.g., Donnelly v. Commissioner,262 F.2d 411 (2d. Cir. 1959), affg. 28 T.C. 1278 (1957); Yeomans v. Commissioner,30 T.C. 757↩ (1958).