EDWIN L. JONES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 85869, 91351. Filed February 8, 1963.

*H. Haywood Robbins, Esq.*, for the petitioner.
*Bernard A. Heeke, Esq.*, for the respondent.

OPINION.

DRENNEN, *Judge:* Respondent has determined in these consolidated proceedings that there are due from petitioner deficiencies in gift tax for the years 1956 and 1957 in the respective amounts of $6,517.13 and $3,600.

The only issue for decision is whether petitioner's wife, Annabel L. Jones (hereinafter called Annabel), signified her consent, within the meaning of section 2513(a)(2),[1] to have the gifts made by petitioner during 1956 and 1957 considered as made one-half by her.

The case was submitted under Rule 30 of the Rules of Practice of this Court. The stipulated facts are found accordingly.

Petitioner and his wife, Annabel, throughout the period here involved resided in Charlotte, N.C. Petitioner filed Federal gift tax returns for the years 1956 and 1957 with the district director of internal revenue, Greensboro, N.C.

Under date of October 2, 1954, petitioner executed a trust agreement reciting that he was transferring in trust to Wachovia Bank & Trust Co. as trustee (hereinafter called the trustee) for 8 named beneficiaries who were his grandchildren, 800 shares of corporate stock.

Petitioner filed a Federal gift tax return, prepared by his accountants, in the name "Edwin L. Jones" as donor for each of the years 1954, 1955, 1956, and 1957, each of which was signed somewhere on the

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise noted.

return by petitioner. On the first page of each of these returns appears the question "Do you consent to have the gifts made by both you and your spouse to third parties during the calendar year considered as having been made one-half by each of you?" followed by spaces for the answer and the name of the spouse. This part of the return is to be completed by the donor filing the return. Further down the first page of the return is a separate space headed "Consent of Spouse" followed by the printed statement "I consent to have the gifts made by both me and my spouse to third parties during the calendar year considered as having been made one-half by each of us." Following this statement is a signature line designated for the signature of spouse which the instructions state should be signed by the spouse of the donor to signify his or her consent to the "gift splitting." Further down the page is a signature line for the signature of the donor. On each of the above returns petitioner answered the first question "Yes" and indicated his spouse's name was "Annabel L. Jones."

Petitioner's gift tax return for 1954 listed gifts in trust to each of eight grandchildren having a total value of $40,000, of which one-half was shown as being considered made by Annabel, leaving a balance of $20,000 as a value of petitioner's total gifts for the year. Inasmuch as the total annual exclusions exceeded petitioner's total gifts for the year his return indicated no taxable gifts for the year. On the signature line under the heading "Consent of Spouse" appears the signature "Mrs. Annabel L. Jones" and it is dated April 15, 1955. Petitioner signed the return on the signature line provided for the donor.

Petitioner's gift tax return for the year 1955 listed gifts in trust to each of eight grandchildren and outright gifts to petitioner's son and daughter having a total value of $49,850, of which one-half was shown as being considered made by Annabel, leaving the sum of $24,925 as the value of the total gifts of petitioner for the year. The total annual exclusions exceeded petitioner's total gifts for the year and the return indicated no taxable gifts for the year. The signature "Edwin L. Jones" appears on the signature line under the heading "Consent of Spouse" with the date April 14, 1956, and the signature "Mrs. Annabel Lambeth Jones" appears on the signature line provided for the signature of the donor.

Petitioner's gift tax return for 1956 listed gifts in trust to each of eight grandchildren and outright gifts to petitioner's son and daughter in the total value of $58,965, of which one-half was shown as being considered made by Annabel, leaving the sum of $29,482.50 as the value of petitioner's total gifts for the year. The total annual exclusions exceeded the total value of petitioner's gifts for the year and the return indicated no taxable gifts for the year. The signature "Edwin L. Jones" appears on the signature line provided for signature of the

donor but the signature line under the heading "Consent of Spouse" is blank. Annabel's signature does not appear anywhere on this return.

Petitioner's gift tax return for the year 1957 listed gifts in trust to each of eight grandchildren having a total value of $40,000, of which one-half was shown as being considered made by Annabel, leaving the sum of $20,000 as the total value of petitioner's gifts for the year. The total annual exclusions exceeded the value of petitioner's total gifts for the year and the return indicated no taxable gifts for the year. The signature "Edwin L. Jones" appears on the signature line provided for the signature of the donor. The signature line under the heading "Consent of Spouse" is blank. Annabel's signature does not appear anywhere on the 1957 return.

Annabel did not file a gift tax return for any of the years 1954 through 1957.

Donee information returns were filed for each beneficiary for each of the above years and they all reported "Edwin L. Jones" alone as the donor, except the information returns for the year 1956 which reported "Mr. and Mrs. Edwin L. Jones" as donors. The eight information returns, prepared for the donees by the trustee, for the year 1956 were forwarded to petitioner with a covering letter from an officer of the trustee-bank which was dated April 3, 1957, and which read as follows:

Dear Mr. Jones:

We enclose eight forms 710 representing the Trustee's Information Return of Gifts made during the calendar year 1956. You will remember that you and Mrs. Jones jointly donated the sum of $48,000.00 to be divided equally among the eight trusts which you established some years ago for your grandchildren. You will probably wish to discuss with your tax accountant the matter of whether or not a gift tax return should be filed by you and Mrs. Jones. If you think we can be of any assistance in this matter, I hope sincerely you will have no hesitancy in calling me.

On or about September 1, 1957, petitioner received from the office of the district director of internal revenue, Greensboro, N.C., a form letter known as an FL–664 with regard to his gift tax return for 1956. This form letter is a one-page mimeographed form normally issued to a taxpayer over the signature of the Chief, Returns Processing Branch in the office of the district director, in the following circumstances: When a Federal gift tax return is filed early in the year following the taxable year and preceding April 15 and the consent of spouse or the donor's signature is not executed and sufficient time remains before the last date for filing, the Form FL–664 is then mailed to the taxpayer with a suspense date indicated on said letter. The suspense date is always set at a date not later than April 15, the last date for filing.

The date of mailing is supposed to be indicated on the Form FL–664, but no date appears on the form letter sent petitioner.

Form FL–664 received by petitioner is as follows:

Mr. and Mrs. Edwin L. Jones,
C/O J. A. Jones Construction Company,
Charlotte, North Carolina.

Year: 1956

Your Federal gift tax return cannot be processed because it was not properly signed. We have indicated below the signature(s) required:

( ) Signature of donor
(√) Signature of donor's spouse

Please sign the statement at the bottom of this letter and return promptly. Very truly yours,

(S)   John Y. Stokes,
John Y. Stokes,
Chief, Returns Processing Branch.

I declare under penalties of perjury that the return referred to above (including any accompanying schedules and statements) was examined by me and to the best of my knowledge and belief is a true, correct, and complete return.

```
---------------------------------
     (Signature of donor)
```

```
---------------------------------
 (Signature of donor's spouse)
```

Annabel signed the Form FL–664 in both spaces indicated and returned it to petitioner's accountant sometime before November 24, 1958, when the accountant returned it to a representative of respondent at a conference.

The mailing of the Form FL–664 to petitioner was an error in procedure because sufficient time did not remain for its execution before April 15, 1957.

Petitioner and Annabel maintained a joint bank account at the trustee-bank. It was the usual type of joint account with right of survivorship and with the right, by either petitioner or Annabel, to make withdrawals from the account. Annabel had an independent income of between $15,000 and $20,000 for each of the years 1956 and 1957 which sums were deposited in the joint account. Petitioner borrowed the money to make the gifts in trust for 1956, and the loan was repaid from the joint bank account.

Petitioner's gift tax returns for the years 1956 and 1957 were prepared by an accountant who was instructed to prepare them in such a manner as to avail petitioner of the gift-splitting benefits of section 2513, and the accountant prepared such returns in accordance with the instructions, deducting from the total gifts of the donor one-half thereof as the portions of the reported gifts to be reported by the

spouse. Neither petitioner nor Annabel filed any gift tax returns for the years 1956 and 1957 other than those mentioned above.

Petitioner signified his consent to have the gifts made to third parties considered as having been made one-half by himself and one-half by Annabel on each of his returns for the years 1956 and 1957, in the manner prescribed thereon. It was indicated on both return forms that, if the taxpayer so consented, the spouse of the taxpayer should sign the consent in the space for that purpose on the same page. On both returns he reported that no gifts were made by Annabel and that no gift tax returns would be filed by her.

Annabel's failure to execute the consent of spouse on petitioner's 1956 and 1957 gift tax returns was due to inadvertence during the signing of numerous Federal and State tax returns for the years 1956 and 1957.

The deficiencies herein result from respondent's determination that, in computing the amount of petitioner's taxable gifts for 1956 and 1957, no part of his gifts is to be considered as having been made by Annabel.

Annabel did not signify her consent to have one-half of the gifts made by petitioner during 1956 and 1957 considered as being made by her.

The only issue is whether petitioner, in computing his gift tax liability for the years 1956 and 1957, may have one-half of his total gifts for each of those years considered as being made by his spouse, Annabel, where Annabel failed to sign the "Consent of Spouse" form or otherwise signify her consent to the gift splitting on the face of petitioner's returns. Annabel was not required to file returns herself, and she did not do so; thus her consent was not indicated on returns filed by her.

The issue is governed by the provisions of section 2513 as set forth in the margin.[2] We have found no case under this section directly in point, although *Camiel Thorrez*, 31 T.C. 655 (1958), affirmed per curiam 272 F. 2d 945 (C.A. 6, 1959), does interpret and apply the predecessor of this section in the 1939 Code under somewhat different facts.

---

[2] SEC. 2513. GIFT BY HUSBAND OR WIFE TO THIRD PARTY.

   (a) CONSIDERED AS MADE ONE-HALF BY EACH.—

     (1) IN GENERAL.—A gift made by one spouse to any person other than his spouse shall, for the purposes of this chapter, be considered as made one-half by him and one-half by his spouse, but only if at the time of the gift each spouse is a citizen or resident of the United States. This paragraph shall not apply with respect to a gift by a spouse of an interest in property if he creates in his spouse a general power of appointment, as defined in section 2514(c), over such interest. For purposes of this section, an individual shall be considered as the spouse of another individual only if he is married to such individual at the time of the gift and does not remarry during the remainder of the calendar year.

     (2) CONSENT OF BOTH SPOUSES.—Paragraph (1) shall apply only if both spouses have signified (under the regulations provided for in subsection (b)) their consent to

In summary, section 2513 authorizes so-called gift splitting between spouses if both spouses have signified their consent to have the gifts made by either during the calendar year as having been made one-half by each. Section 2513(a)(2) provides that both spouses must signify their consent under regulations to be prescribed in accordance with section 2513(b). The statutory provision does not direct the *manner* for signifying consent; that is left to the regulations. However, the *time* for signifying such consent is prescribed in section 2513(b)(2). But it is clear from the statutory provisions that it is necessary (1) that both spouses consent to have the gifts of each considered as made one-half by the other, and (2) that such consent be signified by both spouses.

Section 25.2513-2(a), Gift Tax Regs., promulgated under section 2513(b)(1), provides:

Sec. 25.2513-2 Manner and time of signifying consent.

(a) Consent to the application of the provisions of section 2513 with respect to a calendar year shall, in order to be effective, be signified by both spouses. If both spouses file gift tax returns within the time for signifying consent, it is sufficient if—

(1) The consent of the husband is signified on the wife's return, and the consent of the wife is signified on the husband's return;

(2) The consent of each spouse is signified on his own return; or

(3) The consent of both spouses is signified on one of the returns.

If only one spouse files a gift tax return within the time provided for signifying consent, the consent of both spouses shall be signified on that return. However, wherever possible, the notice of the consent is to be shown on both returns and it is preferred that the notice be executed in the manner described in subparagraph (1) of this paragraph. * * *

The foregoing provisions of the regulations, that the spouses signify consent on their returns or on the return of each, was anticipated in the report of the Senate Finance Committee on section 374 of the

---

the application of paragraph (1) in the case of all such gifts made during the calendar year by either while married to the other.

(b) MANNER AND TIME OF SIGNIFYING CONSENT.—

(1) MANNER.—A consent under this section shall be signified in such manner as is provided under regulations prescribed by the Secretary or his delegate.

(2) TIME.—Such consent may be so signified at any time after the close of the calendar year in which the gift was made, subject to the following limitations—

(A) the consent may not be signified after the 15th day of April following the close of such year, unless before such 15th day no return has been filed for such year by either spouse, in which case the consent may not be signified after a return for such year is filed by either spouse;

(B) the consent may not be signified after a notice of deficiency with respect to the tax for such year has been sent to either spouse in accordance with section 6212(a).

*        *        *        *        *        *        *

(d) JOINT AND SEVERAL LIABILITY FOR TAX.—If the consent required by subsection (a)(2) is signified with respect to a gift made in any calendar year, the liability with respect to the entire tax imposed by this chapter of each spouse for such year shall be joint and several.

Revenue Act of 1948, the forerunner of section 2513, in which it was stated:

Inasmuch as the Commissioner is authorized to provide by regulations the manner in which the consent may be signified, the Commissioner may require the consent to be signified on the returns of the spouses.

In the instant case, only petitioner filed a gift tax return for either 1956 or 1957. Annabel filed none. Neither party argues that she was required to file a return for either year or even that she made gifts in these years.[3] Therefore, the provision of the above regulations with which we are concerned is the sentence, "If only one spouse files a gift tax return within the time provided for signifying consent, the consent of both spouses shall be signified on that return."

Under section 2513(b)(2), the time for signifying consent for 1956 was after December 31, 1956, and before April 15, 1957, since petitioner—one of the spouses—filed a valid gift tax return for 1956 by the latter date. Similarly, the time for signifying consent for 1957 was after December 31, 1957, and before April 15, 1958. The time limitation on when the consent may be signified is statutory and is not to be extended by implication. *Camiel Thorrez, supra*. Compare *John F. Bayley*, 35 T.C. 288 (1960). Hence, we need not consider whether Annabel's signing of Form FL–664, which was erroneously sent to petitioner on or about September 1, 1957, was a timely signifying of her consent to split gifts for the year 1956 .

That Annabel did not sign petitioner's returns for 1956 and 1957 in the space for her signature under "Consent of Spouse" is admitted. Furthermore, she did not sign the return forms in any manner. Had she signed her name to the form although in the wrong space, as she did for 1955, perhaps it would be considered—as respondent has apparently done—that consent was signified by her. But there is nothing appearing on either return that can be taken to be *Annabel's* signifying of consent.

As we have seen, the statute requires that both spouses *signify* consent in the manner provided by the regulations, and the regulations provide that the consent, to be effective, must be signified by both spouses. While the regulations do not specify how the consent shall be signified, they do specify that if only one spouse files a return, the consent of both spouses shall be signified *on that return*. The gift tax return form, and the instructions relating thereto, clearly indicate how the consent of the spouse is to be signified; that is by signing his or her name to the consent statement in the space provided therefor.

---

[3] There is no evidence that Annabel made any gifts in 1957, and the only indication that she made gifts in 1956 is a statement by an officer of the trustee-bank from which it appears that he considered that she joined in petitioner's gifts in trust in that year, and the fact, which the parties have stipulated, that the loan which petitioner obtained to make the gifts in 1956 was repaid from the joint bank account of petitioner and Annabel.

It is clear here that Annabel did not signify her consent in the manner contemplated by the regulations, and hence by the statute. This Court said in *Camiel Thorrez, supra* at 668, "The making of an election is involved where a taxpayer has a choice of two methods of computing his tax, each of which is legal"; and, at page 670, "Generally, statutory provisions which allow the making of an election must be strictly construed and applied." Furthermore, there is good reason for requiring strict compliance with the statutory and regulatory requirements that the consent of both spouses be signified in the manner prescribed. The consent of each spouse is not only that his or her own gifts be considered made one-half by the other spouse, but also that all gifts of the other spouse be considered made one-half by him or her. Signifying the consent is also a prerequisite to the joint and several liability for the entire tax as provided in section 2513(d); and the gift tax being cumulative, it may also have a bearing on the spouse's future tax liability.

We have little doubt that had the matter been brought to Annabel's attention she would have consented to the gift splitting and would have so signified by signing the returns.[4] It is stipulated that had Annabel been called as a witness she would have testified that she intended to execute the consent-of-spouse forms on both returns but failed to do so by inadvertence. But even if it be proved that there was the requisite consent, only the first of the statutory conditions would be satisfied. This consent must be signified.

Petitioner argues that "signify" means "to make known by signs or words," "to denote, import, betoken," or "to communicate by any conventional token," and that it is not necessary to "execute" the consent of spouse in order to "signify" consent on the part of Annabel. But whatever may be the meaning of "signify" it is indisputable that *Annabel* must signify. However, there is nothing in the present record to indicate that Annabel signified or took any action to signify her consent in any manner within the time limit imposed by section 2513.

Petitioner submits that the returns make known, denote, and reflect the intention that the returns be "joint" under section 2513. It is probable that the accountant prepared them with the idea that both petitioner and Annabel would signify consent on them, and that petitioner was aware of this. But petitioner did not sign the returns on her behalf.[5] And there is no indication that Annabel, or anyone acting on her behalf, made known the consent, unless we impute petitioner's action to Annabel simply because they were spouses, and this

---

[4] We find it a little difficult to understand how Annabel overlooked signing the 1957 return when her failure to sign the 1956 return had so recently been brought to her attention.

[5] Cf. Rev. Rul. 54-6, 1954-1 C.B. 205.

is implicitly prohibited by section 2513(a)(2) in requiring that both spouses signify.[6] Annabel's purported intention to sign her husband's returns, with no outward evidence thereof on her part, is nothing which can be said to signify or reflect her consent to the gift splitting.

It might be said in some circumstances that a party may "signify" consent by failing to act, coupled with acquiescence in the act of a related party. See *Landy Towel & Linen Service, Inc.*, 38 T.C. 296 (1962), on appeal (C.A. 3, October 1962). Cf. *W. L. Kann*, 18 T.C. 1032 (1952), affd. 210 F. 2d 247 (C.A. 3, 1953), certiorari denied 347 U.S. 967 (1954). But such are not the circumstances here. It is not contended that Annabel should have filed a gift tax return for either year if she did not signify consent on petitioner's returns; in other words, her failure to file her own gift tax returns does not imply consent to the answers given by petitioner on his returns. Cf. *Muriel Heim*, 27 T.C. 270 (1956), affd. 251 F. 2d 44 (C.A. 8, 1958); *Walter M. Ferguson, Jr.*, 14 T.C. 846 (1950); *Myrna S. Howell*, 10 T.C. 859 (1948), affirmed per curiam 175 F. 2d 240 (C.A. 6, 1949). Furthermore, while we have doubts that the tacit consent doctrine should be applied here in view of the statutory requirements that both spouses *signify* consent, as we pointed out in *Vincent S. Hennen*, 35 T.C. 747 (1961), that doctrine has been applied by this Court only in cases in which respondent was seeking to impose tax liability upon a spouse who had not signed the return, the tacit consent presumption being nothing more nor less than the presumption of correctness attaching to respondent's determination that a joint return was in fact intended. Here respondent has made no such determination.

The statute requires consent and some manifestation of it by each spouse. At the very least, each spouse must "signify"—that is, give indication in a discernible manner by which his or her concurrence in the consent may be objectively determined. This is important for future tax consequences and for fixing the joint and several liability imposed by section 2513(d). The evidence herein shows only that Annabel intended to, but did not, "signify" consent by signing her name; she meant for this to be the significant act. As regards her, no other significant act appears from the record.

Although the result herein is unfortunate in that the failure to properly elect the advantages of the statute was probably the result of an oversight occasioned by executing several tax returns, the statutory requirements are clear and definite, and we are constrained to sustain respondent's determination. As we said in *Camiel Thorrez*, *supra* at 668:

An oversight, * * * or a failure to make a claim in the first return filed, in which a claim should have been made, precludes the taxpayer from later attempt-

---

[6] Cf. Rev. Rul. 188, 1953–2 C.B. 292.

ing to make an election where he has failed to comply with a statutory condition precedent to making the claim. * * *

*Decisions will be entered for the respondent.*