J. MICHAEL SPRINGMANN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Springmann v. Commissioner
Docket No. 37452-85.
United States Tax Court
T.C. Memo 1987-474; 1987 Tax Ct. Memo LEXIS 470; 54 T.C.M. (CCH) 592; T.C.M. (RIA) 87474; September 21, 1987. John F. Rodgers, for the petitioner. Wilton A. Baker, for the respondent. *471 BUCKLEY
MEMORANDUM FINDINGS OF FACT AND OPINION BUCKLEY, Special Trial Judge: This case was heard pursuant to section 7456(d) of the Internal Revenue Code (redesignated as sec. 7443A(b) by sec. 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755) and Rules 180, 181 and 182. [1]
Respondent determined a deficiency in petitioner's Federal income tax for 1980 in the amount of $ 4,814.26. Following concessions by petitioner, the issues for decision are: (1) whether petitioner is entitled to "married filing joint return" filing status; (2) whether petitioner is entitled to a personal exemption for Jeanne L. Springmann, his wife during 1980; and (3) the amount petitioner is entitled to deduct as nonreimbursable representation expense. [2] If we conclude that petitioner is not entitled to the "married filing joint return" status, petitioner requests the Court to allocate rental income for 1980 between himself and Jeanne *472 L. Springmann. At trial, respondent joined in the request. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioner resided at Camp Springs, Maryland, when he filed his petition in this case. Petitioner and Jeanne L. Springmann (Jeanne) were married on April 29, 1972. They separated on May 30, 1980 and divorced on December 28, 1983. For the taxable years 1972 through 1978, petitioner and his wife filed joint Federal income tax returns. Petitioner prepared and filed a join return for 1979, but Jeanne did not sign it. During 1980 and 1981, petitioner was employed as a commercial officer by the United States Department of Commerce and was assigned as a commercial attache to the American Embassy in New Delhi, India. During this period Jeanne and the couple's daughter, Amanda, lived in the United States. Petitioner employed servants at his New Delhi residence for cooking, cleaning, laundering his clothes, and serving his guests. *473 During 1980, petitioner and Jeanne owned two rental properties in tenancy by the entirety: a 3-bedroom house in Silver Spring, Maryland, and a 2-bedroom beach cottage in Dennisport, Massachusetts. Although petitioner and Jeanne were divorced in 1983, the house and cottage were still marital property at the time of trial in 1986, due to the couple's inability to reach a property settlement. During 1980, rental payments on the Maryland house were sent to a realtor who, in turn, paid the mortgage. Jeanne deposited the rental payments she received for the Massachusetts property into the couple's joint checking account and sent the deposit slips to petitioner. On March 16, 1981, Jeanne wrote to petitioner in New Delhi. The letter stated, in pertinent part: I have been trying to make arrangements for paying the 1980 Income Tax. I will examine and sign (if acceptable) a joint return if you prepare it and send the completed return and statements to me by June 1. That is if I receive the papers by June 1. Otherwise I will file a separate return. The requested draft return was never received by Jeanne who had requested and obtained an extension of time in which to file a 1980 *474 tax return. She was advised by her attorney to file a return with whatever information she had. On June 27, 1981, she filed a tax return reporting her status as "married filing separate return." She listed her occupation as teacher and reported wages of $ 63.72 from the Board of Education of Prince George's County, Maryland. She also reported interest income of $ 4.06, for a total income of $ 67.78. She did not report any income or claim any deductions in connection with the two rental properties. She reported no tax liability for 1980. On November 11, 1981, petitioner was granted an extension of time until January 30, 1982 in which to file an income tax return for 1980. He filed the return on January 10, 1982, with an accompanying letter to the Internal Revenue Service Center in Philadelphia, Pennsylvania. In pertinent part, the letter stated: You will note that the return, a joint one since my wife and I are still legally married, bears only my signature. I am sending a copy to my lawyer in Washington in the hopes of having her sign it, a slim possibility since she, for reasons of her own, refused to sign the 1979 return. Petitioner reported income of $ 4,002.50 and *475 claimed deductions totaling $ 6,808.29 on the Maryland house, for a reported loss of $ 2,805.79. He conceded a decrease in the depreciation deduction in the amount of $ 267.30, since the house was only rented for 10 months, bringing the loss to $ 2,538.49. Petitioner did not report any income from the Massachusetts property on which he claimed a loss of $ 4,233.18. He conceded an addition to income in the amount of $ 1,452 for rental payments on the cottage for 1980, resulting in a loss of $ 2,781.18. Under miscellaneous deductions, petitioner claimed home leave expenses of $ 1,048.88 and nonreimbursable representation expenses of $ 727.75. Respondent disallowed $ 101.88 of the former amount, and petitioner conceded the item. Petitioner presented respondent with a letter from the Budget and Management Officer at the United States Embassy in New Delhi certifying that petitioner incurred representation expenses of $ 325 during 1980 which were not reimbursed because of insufficient funds, and respondent allowed this amount. Respondent disallowed $ 402.75 claimed as representation expenses by petitioner for payments to his New Delhi servants. Petitioner did not report Jeanne's *476 income of $ 67.78. He claimed an exemption for her. Respondent disallowed the exemption and recomputed petitioner's tax using a zero bracket amount of $ 1,700 and the rates for married individuals filing separately. OPINION The first issue for decision is whether the return filed by petitioner constitutes a joint return. Joint returns must be intended as such by both spouses, and the question of the spouses' intention is one of fact. Estate of Campbell v. Commissioner,56 T.C. 1, 12 (1971), and cases cited therein; Federbush v. Commissioner,34 T.C. 740, 754-758 (1960), affd. 325 F.2d 1 (2d Cir. 1963). Therefore, the resolution of this issue depends upon whether Jeanne indicated that the return filed by petitioner constitute their joint return. We find the filing of a separate return to be clearly and completely dispositive of the question of Jeanne's intent; viz, she did not intend to file jointly with petitioner. The evidence and testimony of Jeanne at trial made it completely apparent that she did not intend to file a joint return with petitioner. Petitioner's arguments, in light of Jeanne's separate return, are without *477 merit and totally futile. They represent a misplaced reliance on previously decided cases of this Court where the facts presented were superficially similar but clearly distinguishable from those now before us. In none of the cases cited by petitioner for support of his position did the spouse arguing joint return status file a separate return. The Court therefore looked to various circumstances surrounding the filing of the purported joint returns in order to decipher the parties' intent. In the present case it is not necessary for us to search out and weigh indicia of Jeanne's intent. We find that her intent was unambiguously manifested by the filing of her separate return. Accordingly, petitioner is not entitled to "married filing joint return" status. Section 151 explicitly states that an exemption cannot be claimed for a spouse who has gross income for the calendar year in which the taxable year of the taxpayer begins. This is so even though the spouse's gross income is insufficient to require the filing of a return. Sec. 1.151-1(b), Income Tax Regs. We find that Jeanne had gross income in 1980, and therefore petitioner is not entitled to the exemption for her. The *478 next issue for decision is whether petitioner may deduct the payments to his New Delhi servants. Section 913 exempts from taxation certain allowances granted to employees of the Foreign Service of the United States. One such allowance is termed "representation" allowance. Respondent has ruled that the amount of so-called representation expenses are deductible, even when not reimbursed by the United States, where they have been certified by the Department of State as representation expenses. Rev. Rul. 57-364, 1957-2 C.B. 458 and Rev. Rul. 59-407, 1959-2 C.B. 19, 23. Further, respondent by Rev. Rul. 65-125, 1965-1 C.B. 88, has allowed the deduction of nonreimbursed and noncertified representation expenses if they were ordinary and necessary under section 162 in the performance of the taxpayer's assigned duties. At trial, both parties focused considerable attention on the fact that petitioner had not obtained a certificate by the Secretary of State concerning these expenses, as called for in respondent's revenue rulings. [3] Petitioner testified that he was unaware of such a "requirement" despite having obtained such a certification which led *479 to respondent's concession of $ 325 of the amount previously disallowed. In our view, however, the lack of certification is not determinative herein. We must consider whether the payments to petitioner's New Delhi servants were deductible under section 162. *480 As a commercial attache, petitioner was responsible for promoting and protecting American business interests in India. Ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business are deductible. Sec. 162. Personal, living, and family expenses are not deductible. Sec. 262. Petitioner must prove his entitlement to the claimed deductions by establishing that the expenses of maintaining servants were ordinary and necessary expenses incurred in performing the duties of his assignment. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). On the basis of the facts presented, we conclude that petitioner's payments to his servants represented personal, living expenses and are therefore not deductible. Sec. 262. Cooking, cleaning, and laundering are necessary tasks of everyday life, regardless of the climate or social traditions of a particular locale. There is no doubt that every working taxpayer would have more time and energy to devote to his or her profession if these chores were performed for them by others. We recognize that certain aspects of daily life peculiar to India are dissimilar to those in the United *481 States. In the context of the issue before us, however, we view them as distinctions without a difference. Petitioner was provided with guard service for his residence at night. He testified that his male servant doubled as a form of guard service during the day. Daytime vandalism and burglaries are not indigenous to New Delhi. Providing protection for his home and possessions during the day has no relation to petitioner's profession and is a personal expenditure. Also, because the caste system survives socially, albeit not legally in India, petitioner testified he believed the Indians with whom he dealt would treat him more respectfully if he employed servants and "behaved in the style to which Indians were accustomed to seeing high caste people behave." We remain unconvinced by petitioner's testimony that his claimed deductions related to his profession. Accordingly, respondent is sustained on this issue. We now turn to petitioner's request, joined by respondent at trial, that we allocate the rental income received on the two rental properties during 1980 between petitioner and Jeanne. Since they owned both properties as tenants by the entirety, State law controls the *482 issue of which spouse is entitled to the income. We first consider the Maryland property. It is firmly established law in Maryland that absent an agreement of the spouses to the contrary, each spouse is entitled to one-half of the income from property held in a tenancy by the entirety. Masterman v. Masterman,129 Md. 167, 98 A. 537 (1916). See also Lipsitz v. Commissioner,220 F.2d 871 (4th Cir. 1955), affg. 21 T.C. 917 (1954), cert. denied 350 U.S. 845 (1955); Saulsbury v. Commissioner,27 B.T.A. 744 (1933). Petitioner testified, and we find, that no agreement on this matter existed between petitioner and Jeanne. Therefore, for 1980, petitioner should have reported only half of the income from the Maryland rental property. Since the mortgage payments were made from the rental proceeds, petitioner is entitled to deduct only one-half of the interest payments and, if real property taxes were paid by the realtor from the rental proceeds, only half of that deduction. Because the depreciation deduction is predicated upon an investment in property, the benefits of the allowance should inure to those *483 who would suffer an economic loss caused by wear and exhaustion of investment property. Mayerson v. Commissioner,47 T.C. 340, 350 (1966); Blake v. Commissioner,20 T.C. 721 (1953). Accordingly, petitioner is also entitled to one-half of the depreciation deduction for 1980. The Massachusetts property was also held in tenancy by the entirety. Prior to 1980, Massachusetts retained the common law rule that the husband "during coverture and as between himself and wife, had the absolute and exclusive rights to the control, use, possession, rents, issues and profits of property held as tenants by the entirety." Licker v. Gluskin,265 Mass. 403, 164 N.E. 613 (1929). A 1979 enactment extensively changed the law which now states that "A husband and wife shall be equally entitled to the rents, products, income or profits and to the control, management and possession of property held by them as tenants by the entirety." Mass. Ann. Laws ch. 209, sec. 1 (Law. Co-op 1981). This statute, however, is effective on February 11, 1980, and does not apply to tenancies by the entirety created before that date. Turner v. Greenaway,391 Mass. 1002, 459 N.E. 2d 821 (1984); *484 West v. First Agricultural Bank,382 Mass. 534, 419 N.E. 2d 262 (1981). Petitioner reported on Schedule E of his 1980 tax return that the Massachusetts property was acquired in 1979. Accordingly, we hold that for purposes of his 1980 tax return, petitioner must report all the income from the Massachusetts property and is entitled to the full depreciation allowance thereon as claimed. To reflect the foregoing and concessions by petitioner, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The amount of a medical expense deduction will depend upon petitioner's adjusted gross income as determined herein. ↩
3. In Rev. Rul. 57-364, 1957-2 C.B. 458 and Rev. Rul. 59-407, 1959-2 C.B. 19, 23, the Internal Revenue Service ruled that any deductions for representation expenses claimed by Foreign Service officers in excess of reimbursements must be supported by a certificate by the Secretary of State certifying that such expenses were incurred for the benefit of the United States and that they would be properly reimbursable under the terms of Title IX of the Foreign Service Act of 1946 if the Department of State had sufficient funds for such reimbursement. Respondent relaxed the requirement somewhat in Rev. Rul. 65-125, 1965-1 C.B. 88↩, which states that expenses incurred in excess of those either reimbursed or certified as properly reimbursable may be deducted under section 162 if the expenses are ordinary and necessary in the performance of assigned duties and the further requirements for deductibility have been met.