T.C. Summary Opinion 2003-131

UNITED STATES TAX COURT

PETER SPULER, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2136-02S.                    Filed September 17, 2003.

Peter Spuler, Jr., pro se.

Innessa Glazman, for respondent.

PANUTHOS, Chief Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal

Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies, additions to tax, and penalties in petitioner's 1997 and 1998 Federal income taxes as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|-----------|--------------------------------|----------------------|
| 1997 | $7,571 | $1,468.25 | $2,212.20 |
| 1998 | 24,052 | 5,341.75 | 4,288.40 |

After concessions,[1] the issues for decision are: (1) Whether petitioner is entitled to "married filing joint return" filing status for the 1997 taxable year; (2) whether petitioner is liable for additions to tax for failure to file timely returns for the 1997 and 1998 taxable years pursuant to section 6651(a)(1); and (3) whether petitioner is liable for accuracy-

---

[1] With respect to the 1997 taxable year, respondent concedes the issue whether petitioner had unreported capital gain of $5,981, while petitioner concedes that he is not entitled to either the self-employment health insurance deduction of $4,866 or a deduction for Keogh and self-employed SEP and SIMPLE plans of $30,000. With respect to the 1998 taxable year, respondent concedes that petitioner did not have unreported taxable interest income of $81 and unreported capital gain of $26,091 and that petitioner is not liable for a tax deficiency and additional tax under sec. 72(t) resulting from an IRA distribution of $19,908.16. With respect to the 1998 taxable year, petitioner concedes that he had unreported interest income of $80, that he is not entitled to either the self-employment health insurance deduction of $4,987 or the IRA deduction of $2,000, and that he should have filed using the status of "married filing separate return" instead of "head of household".

related penalties for the 1997 and 1998 taxable years pursuant to section 6662(a).

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided at Fort Washington, Maryland.

Petitioner was married to Judith Richardson Spuler (Ms. Spuler). In December 1997, petitioner and Ms. Spuler separated and began to live apart. They were divorced in May 1999.

Before their divorce, Ms. Spuler sent respondent a letter dated November 25, 1998, which stated in part:

> At the end of 1997, my husband and I separated. Divorce proceedings have commenced. It was my understanding that we would file a joint return for 1997, and that my husband would file for an extension of time to file until October 15. Our relationship has become increasingly difficult and I am unable to obtain copies of various documents, including the Application for Extension of Time to File. In view of our estranged circumstances, I finally decided to proceed with filing a separate return even though it substantially increased my tax liability.

Indeed, Ms. Spuler had filed on October 13, 1998, a Form 1040, U.S. Individual Income Tax Return, for the 1997 taxable year (separate return). She filed using the status of "married filing separate return" and reported wages of $37,098.

On May 13, 1999, petitioner filed a Form 1040 for the 1997 taxable year (1997 return). Petitioner had requested, and was granted, an extension of time to file the 1997 return until

August 15, 1998.[2]  He claimed a filing status of "married filing
joint return".  Petitioner signed the 1997 return on behalf of
himself and Ms. Spuler.  Ms. Spuler indicated in a notarized
statement of October 10, 2002, that she "did not authorize * * *
[petitioner] to file a joint return for taxable year 1997."

The 1997 return reported total income of $169,685.  Of this
amount, $37,098 was attributable to wages Ms. Spuler had reported
in her separate return.[3]  The 1997 return also reported (1) a
self-employed health insurance deduction of $4,866, (2) a
deduction for Keogh and self-employed SEP and SIMPLE plans of
$30,000, and (3) itemized deductions of $100,113.  With respect
to the 1997 return, petitioner received a refund check made
payable to him and Ms. Spuler in the amount of $5,187.
Petitioner endorsed the refund check with Ms. Spuler's name and
deposited the proceeds.  The record does not contain credible
evidence that Ms. Spuler shared the proceeds of the refund.

---

[2]  Petitioner testified that he had requested an additional
extension of time to file the 1997 return beyond Aug. 15, 1998.
Respondent has no record of receipt of petitioner's request for
an additional extension of time to file, nor did petitioner
produce a copy of such a request.

[3]  Ms. Spuler's Form W-2, Wage and Tax Statement, indicated
wages of "$37,098.24" for the 1997 taxable year.  As indicated,
Ms. Spuler reported wages of $37,098 in her separate return.  In
contrast, the notice of deficiency included a downward adjustment
to petitioner's income of "$37,099".

On March 26, 2000, petitioner filed a Form 1040 for the 1998 taxable year (1998 return). He filed as a "head of household" and claimed an IRA deduction of $2,000 and a self-employed health insurance deduction of $4,987.

On May 31, 2000, petitioner contracted Lyme disease, which resulted in his receiving a doctor's care for retinal degeneration.

Respondent issued petitioner a notice of deficiency dated August 1, 2001. For the 1997 taxable year, respondent adjusted petitioner's filing status from "married filing joint return" to "married filing separate return" and determined an addition to tax of $1,468.25 under section 6651(a)(1) and a penalty of $2,212.20 under section 6662(a).[4] For the 1998 taxable year, respondent determined an addition to tax of $5,341.75 under

---

[4] Respondent also made other adjustments to the 1997 return. Some of them are computational or result from respondent's proposed adjustment in petitioner's filing status. They include changes to the amount of (1) alternative minimum tax, (2) exemptions, (3) itemized deductions, and (4) wage income. The remaining adjustments, as indicated, have been resolved by mutual concession. They involve the following: (1) Inclusion of unreported capital gain of $5,981; (2) disallowance of a self-employed health insurance deduction of $4,866; and (3) disallowance of a deduction for Keogh and self-employed SEP and SIMPLE plans of $30,000.

section 6651(a)(1) and a penalty of $4,288.40 under section 6662(a).[5]

Petitioner contends that he is not liable for the additions to tax under section 6651(a)(1) because his medical condition, his divorce, and his request for an additional extension of time to file his 1997 return constitute reasonable cause for his failures to file timely returns. Petitioner further contends that he is not liable for the penalties under section 6662(a) because the underpayments on the 1997 return and the 1998 return were not attributable to negligence, as evidenced by respondent's various concessions in the present case. Petitioner finally contends that he is entitled to the filing status of married filing joint return for the 1997 taxable year for three reasons. First, petitioner notes that he and Ms. Spuler, while living apart, were still married in 1997. Second, petitioner avers that he and Ms. Spuler had a continuing tradition of filing joint tax returns for 30 consecutive years before the 1997 return. Third, petitioner avers that Ms. Spuler agreed to file a joint return for the 1997 taxable year.

---

[5] Respondent made various adjustments to the 1998 return. Those adjustments include, but are not limited to, changing petitioner's filing status from "head of household" to "married filing separate return". As indicated above, the parties have made concessions with respect to many of these adjustments. The remaining adjustments are computational.

Respondent contends that Ms. Spuler did not intend to file a joint return for the 1997 taxable year because (1) she filed a separate return for the same taxable year before petitioner's filing of the 1997 return and (2) she did not sign the 1997 return.

Filing Status

As the tax returns for 1997 and 1998 were filed after July 22, 1998, section 7491(a) is applicable. Petitioner did not assert nor present evidence or argument that he satisfied the requirements of section 7491(a). Accordingly, the burden of proof with respect to relevant factual issues has not shifted to respondent.

Every married individual may make a single return jointly with his or her spouse under section 6013 or may make a separate return. See sec. 1(a), (d). An individual shall not be considered married if, at the end of the taxable year, such individual is legally separated from his or her spouse under a decree of divorce or of separate maintenance. Sec. 7703(a).

Married filing jointly status does not apply to a Federal income tax return unless both spouses intend to make a joint return. Jones v. Commissioner, 327 F.2d 98, 101 (4th Cir. 1964), revg. 39 T.C. 734 (1963). The question whether both spouses intended to file a joint return is a factual one. Id.

One factor to consider is whether one of the spouses filed a separate return. In Springmann v. Commissioner, T.C. Memo. 1987-474, and Etesam v. Commissioner, T.C. Memo. 1998-73, we found that the filing of a separate return by the taxpayer's spouse demonstrated a lack of intent to file a joint return. But this factor alone is not dispositive in all cases. In certain circumstances, a husband and wife may still file a joint return for a taxable year after one or the other has filed a separate return, or both have filed separate returns for that taxable year. Sec. 6013(b).

Other factors to consider are whether the purported joint return contains the signatures of both spouses and under what circumstances those signatures were obtained. In general, a joint return must be signed by both spouses unless one spouse signs as an agent of the other. Sec. 6061; sec. 1.6013-1(a)(2), Income Tax Regs. Where a signature is obtained by fraud or duress, there is no intent to file a joint return. See United States v. Kramer, 52 AFTR 2d 83-5630, 83-2 USTC par. 9474 (D. Md. 1983). And where one of the spouses has not actually signed the return and has not consented to anyone else's signing it on his or her behalf, there is also no intent to file a joint return. See, e.g., Leggett v. Commissioner, T.C. Memo. 1976-7. Such consent by the nonsigning spouse may be tacit or express. See Jones v. Commissioner, supra at 101 (noting that "silence is

normally and frequently taken for consent even in tax cases"). Tacit consent is evident when the nonsigning spouse accepts the benefits of a joint return. <u>Heim v. Commissioner</u>, 27 T.C. 270, 274 (1956), affd. 251 F.2d 44 (8th Cir. 1958).

In the present case, petitioner was a married individual during the 1997 taxable year. Petitioner and Ms. Spuler separated in December 1997; however, the separation was not pursuant to a decree of divorce or of separate maintenance. Before the divorce in May 1999, Ms. Spuler may have at some point intended to file a joint return for the 1997 taxable year. But by late 1998, before petitioner filed the 1997 return on May 13, 1999, Ms. Spuler did not intend the 1997 return to be a joint return. Indeed, she had already filed a separate return in October 1998. We find that she did not sign the 1997 return and that she did not consent expressly or tacitly to petitioner's signing the 1997 return on her behalf. Moreover, the record does not contain any credible evidence that she accepted or enjoyed any benefits of a joint return; indeed, petitioner was the one who endorsed the refund check with Ms. Spuler's name. With these factors in mind, we conclude that petitioner was not entitled to a filing status of "married filing joint return" for the 1997 taxable year. Thus, we sustain respondent on this issue.

Additions to Tax for Failure To File Timely Under Section 6651(a)

The Commissioner has the "burden of production in any court proceeding with respect to the liability of any individual for any * * * addition to tax" under section 6651(a). Sec. 7491(c). To meet this burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty or addition to tax. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with evidence sufficient to persuade a court that the Commissioner's determination is incorrect. Id. at 447. The taxpayer also bears the burden of proof with regard to issues of reasonable cause, substantial authority, or similar provisions. Id. at 446.

In the present case, respondent has satisfied his burden of production under section 7491(c) by establishing that petitioner's 1997 and 1998 Federal income tax returns were not timely filed. Petitioner does not assert, nor did he present any evidence, that the returns for the years in issue were received or mailed before the due dates.

Section 6651(a)(1) imposes an addition to tax of 5 percent per month of the amount of tax required to be shown on the return, not to exceed 25 percent, for failure to timely file a return. The addition to tax under section 6651(a)(1) is imposed unless the taxpayer establishes that the failure was due to

reasonable cause and not willful neglect. Illness may constitute reasonable cause so long as the taxpayer can establish that illness incapacitated the taxpayer to such a degree that he or she was unable to file the return. See Snyder Air Prods., Inc. v. Commissioner, 71 T.C. 709, 718 (1979); Marrin v. Commissioner, T.C. Memo. 1997-24, affd. 147 F.3d 147 (2d Cir. 1998). Divorce or challenging a separation agreement generally does not constitute reasonable cause. Richardson v. Commissioner, 125 F.3d 551, 557 (7th Cir. 1997), affg. T.C. Memo. 1995-554; Condello v. Commissioner, T.C. Memo. 1998-333.

The record does not establish that the failures to timely file were due to reasonable cause and not willful neglect. Petitioner's claim that he was granted an additional extension of time to file the 1997 return beyond August 15, 1998, is unsubstantiated. His medical condition did not arise until May 31, 2000, well after the 1997 return and the 1998 return were due. And consistent with Condello v. Commissioner, supra, petitioner's divorce from Ms. Spuler serves as no refuge from the addition to tax under section 6651(a)(1). Thus, respondent is sustained on this issue.

Accuracy-Related Penalties Under Section 6662(a)

The Commissioner also has the "burden of production in any court proceeding with respect to the liability of any individual for any penalty" under section 6662(a). Sec. 7491(c); Higbee v.

<u>Commissioner</u>, <u>supra</u> at 446-447.  Section 6662(a) imposes an accuracy-related penalty in the amount of 20 percent of the portion of the underpayment of tax attributable to negligence or disregard of rules or regulations.  See sec. 6662(b)(1).  Negligence is any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws.  See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Moreover, negligence is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances.  <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985).  Disregard includes any careless, reckless, or intentional disregard of rules or regulations.  See sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.  No penalty will be imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.  See sec. 6664(c).

On the basis of the record, we conclude that petitioner is liable for the accuracy-related penalties under section 6662(a).  Petitioner claimed various deductions totaling $41,853 for 1997 and 1998, failed to report $80 of interest income for 1998, and filed as a head of household for 1998.  Petitioner has not shown that he acted in good faith in claiming or not reporting these amounts.  Respondent has met his burden of production under

section 7491(c).  We conclude that petitioner's actions were not those of a reasonable and prudent person under the circumstances. Thus, we sustain respondent on this adjustment.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.