T.C. Summary Opinion 2017-52

UNITED STATES TAX COURT

VICTOR A. EDWARDS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28099-15S.                    Filed July 17, 2017.

<u>Melissa D. Skilliter</u>, for petitioner.

<u>Gary R. Shuler, Jr.</u>, for respondent.

SUMMARY OPINION

WHERRY, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986 (Code), as amended, in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined that petitioner's correct filing status for the taxable year 2013 was married filing separately and that as a result, petitioner has a deficiency of $6,244 in Federal income tax for that year. Respondent also determined that petitioner for that taxable year is liable for an accuracy-related penalty of $8 pursuant to section 6662(a). Petitioner argues that his correct filing status for 2013 was married filing jointly. The issues for decision are: (1) whether petitioner filed a valid joint return for himself and his then spouse for the taxable year 2013 and (2) whether petitioner is liable for an accuracy-related penalty under section 6662(a).

## Background

Some of the facts have been stipulated and are so found. The parties' stipulation of facts and the attached exhibits are incorporated by this reference. When the petition was filed, petitioner was a resident of Ohio.

Petitioner and Sharon Edwards were married in 1986. They adopted two minor children during 1997 and 1998. On June 21, 2013, petitioner filed a complaint for divorce in Ohio State court. However, with the exception of two

weeks, from the end of June to the middle of July 2013, petitioner, Ms. Edwards, and their children shared a home during 2013.

Although divorce proceedings were ongoing, petitioner and Ms. Edwards remained married on December 31, 2013. On February 8, 2014, Ms. Edwards sent petitioner a text proposing to file a joint Federal income tax return for the taxable year 2013 and then to split the resulting refund. They agreed to discuss the possibility of filing a joint return when she returned to their shared home that evening.

On February 12, 2014, petitioner filed a joint Federal income tax return (return) for the taxable year 2013 for himself and Ms. Edwards. The return was prepared by Karl Harris, petitioner's longtime tax return preparer. Although Mr. Harris had prepared returns for petitioner and Ms. Edwards for several years, Ms. Edwards had never met with or spoken to Mr. Harris.

In prior years, petitioner and Ms. Edwards followed a course of conduct under which petitioner, with his wife's actual or implied consent, would provide all of the couple's tax information to Mr. Harris, who would then use it to prepare a return. Ms. Edwards did not expressly provide her tax information, such as her Form W-2, Wage and Tax Statement, for petitioner to use in preparing a return for

the taxable year 2013; instead petitioner provided Mr. Harris with a copy of Ms. Edwards' Form W-2 that was mailed to their shared residence.

In prior years, Ms. Edwards had not throughly reviewed the couple's tax returns before they were submitted. However, she would sign an authorization for the return to be submitted on her behalf, which petitioner would return to Mr. Harris before the return was submitted. Ms. Edwards was not provided with a copy of the taxable year 2013 return, and she did not sign the return or any other authorization before petitioner had the 2013 return filed.

On the purported joint return, petitioner reported wage income of $30,714, of which $26,777 was attributable to Ms. Edwards and $3,937 was earned by petitioner. The IRS processed petitioner's 2013 return and issued Mr. and Ms. Edwards a refund check, in March 2014, for $6,240, which Mr. Edwards cashed.

During their marriage, petitioner and Ms. Edwards had separate bank accounts. During the pendency of their divorce petitioner and Ms. Edwards were jointly responsible for certain household expenses, and petitioner felt that Ms. Edwards owed him money because she had not paid her share of these expenses. Petitioner did not immediately inform Ms. Edwards that he had filed the 2013 return or that he had received a refund, and he did not share any of the refund with her.

On April 5, 2014, Ms. Edwards sent petitioner an additional text message inquiring about whether they should file a joint return for the taxable year 2013. Petitioner responded that Ms. Edwards should "talk to the Judge about it". On April 15, 2014, Ms. Edwards electronically filed Form 4868, Application for Automatic Extension of Time To File U.S. Individual Income Tax Return, for the 2013 taxable year.

Throughout the summer of 2014 attorneys for petitioner and Ms. Edwards exchanged emails concerning the divorce proceedings. Through the summer Ms. Edwards apparently believed that petitioner had filed a married filing separately return on his own behalf for 2013 on which he had claimed both of the couple's children as his dependents.

An Ohio State court entered a divorce decree for petitioner and Ms. Edwards on September 5, 2014. The divorce decree did not mention their tax status for the 2013 taxable year. Under the divorce decree, both petitioner and Ms. Edwards maintained control over their respective bank accounts; petitioner retained the claimed tax refund for 2013.

On October 6, 2014, Ms. Edwards tried to file a married filing separately return for the 2013 tax year, using a copy of her Form W-2 that she obtained online. The IRS rejected that return. Ms. Edwards wrote a letter to the IRS in

which she indicated that she now believed that petitioner had filed a return for her for the 2013 tax year. On October 14, 2014, Ms. Edwards sent petitioner a text asking whether he had filed a return using her Social Security number; petitioner responded "[y]ou don't need to file."

On October 18, 2014, the IRS received a Form 1040, U.S. Individual Income Tax Return, from Ms. Edwards which reflected a married filing separate status and which claimed both marital children as dependents. On November 20, 2014, the IRS informed Ms. Edwards that its records showed that she had now submitted two income tax returns for 2013. The IRS requested that Ms. Edwards explain whether she filed two returns and indicate her filing status. Ms. Edwards' reply indicated that she did not file more than one Federal income tax return for 2013, that her filing status was married filing separately, and that petitioner had used her Social Security number without her knowledge. Ms. Edwards provided respondent with a Form 14039, Identity Theft Affidavit.

Because Ms. Edwards filed a separate return, respondent determined that petitioner's correct filing status for the taxable year 2013 was married filing separately. Accordingly, respondent removed wages, Federal income tax withholding, and a personal exemption attributable to Ms. Edwards from petitioner's return. Respondent also disallowed petitioner's claimed dependency

exemptions for the two children, an earned income tax credit, and claimed charitable contributions, and he also made certain corresponding computational adjustments. The changes to petitioner's return resulted in a determined deficiency in Federal income tax of $6,244 and a penalty under section 6662(a) of $8.

Petitioner timely filed a petition in response to the notice of deficiency. The only issue he raised in the petition, at trial, and on brief is whether he filed a valid joint tax return for the taxable year 2013. Before trial, respondent amended the answer to assert an increased section 6662(a) accuracy-related penalty in the total amount of $1,256.

## Discussion

### I.    Burden of Proof

As a general rule, the Commissioner's determination of a taxpayer's liability is presumed correct, and the taxpayer bears the burden of proving that the determination is improper. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In this case, there is a presumption against a finding that petitioner and Ms. Edwards filed a joint return for the taxable year 2013, arising from respondent's determination that Ms. Edwards did not consent to the filing of a joint return. See Hennen v. Commissioner, 35 T.C. 747, 749 (1961). Pursuant to section 7491(a), the burden of proof on factual issues that affect the taxpayer's tax

liability may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue". Petitioner has neither asserted nor demonstrated that he satisfies the requirements of section 7491(a) to shift the burden of proof onto respondent with respect to any factual issue. Consequently, the burden of proof remains on petitioner.

II.    Joint Return

Section 6013(a) permits a husband and wife to file a joint return. Spouses who elect to file a joint return for a tax year are required to compute their tax on the aggregate income of both spouses, and both spouses are jointly and severally liable for all tax due. See sec. 6013(d)(3); Harrington v. Commissioner, T.C. Memo. 2012-285, at *4.

Married filing jointly status does not apply to a return unless both spouses intend to make a joint return. Jones v. Commissioner, 327 F.2d 98, 101 (4th Cir. 1964), rev'g on other grounds 39 T.C. 734 (1963). Although both spouses are required to sign the joint return, the failure of one spouse to sign does not necessarily negate the intent to file a joint return by the nonsigning spouse. Estate of Campbell v. Commissioner, 56 T.C. 1, 12 (1971); Hennen v. Commissioner, 35 T.C. at 748; see sec. 1.6013-1(a)(1), Income Tax Regs.

Whether an income tax return is a joint return or a separate return of the other spouse is a question of fact. Harrington v. Commissioner, at *8 (citing Heim v. Commissioner, 27 T.C. 270 (1956), aff'd, 251 F.2d 44 (8th Cir. 1958)). The focus of our inquiry is whether Ms. Edwards intended to file and be bound by the return in question. See Shea v. Commissioner, 780 F.2d 561 (6th Cir. 1986), aff'g in part, rev'g in part T.C. Memo. 1984-310.

The courts have considered various factors in determining whether a nonsigning spouse intended to file a joint return, including (1) whether the returns were prepared pursuant to an established practice of preparing and filing a joint return, (2) whether the nonsigning spouse failed to object to the filing of a joint return, (3) whether an affirmative act was taken indicating an intention to file other than jointly, (4) whether one spouse entirely relied on the other spouse to file returns, (5)whether the spouse examined returns presented for a signature, (6) whether separate returns were filed, (7) whether the returns included the income and deductions of the nonsigning spouse, and (8) and whether the nonsigning spouse was aware of the contents of the purported returns. See, e.g., Estate of Campbell v. Commissioner, 56 T.C. at 12-13; Howell v. Commissioner, 10 T.C. 859 (1948), aff'd per curiam, 175 F.2d 240 (6th Cir. 1949); Boyle v.

Commissioner, T.C. Memo. 1994-294; Evans v. Commissioner, T.C. Memo. 1982-700; Crew v. Commissioner, T.C. Memo. 1982-535.

We find that petitioner has not carried his burden of showing that he and Ms. Edwards agreed to file a joint return for the taxable year 2013. We did not find the testimony of either petitioner or Ms. Edwards entirely credible. However, of the basis of their communications and Ms. Edwards' subsequent actions with regard to her 2013 tax return, the Court concludes that petitioner and Ms. Edwards did not actually agree to file a joint return for 2013.

We first note that the purported 2013 joint return was prepared in a somewhat different manner than had been the case of prior years. See Estate of Campbell v. Commissioner, 56 T.C. at 12-13 (finding that a spouse intended to file a joint return notwithstanding a lack of her signature where the return was prepared in a similar manner to those of prior years); Boyle v. Commissioner, T.C. Memo. 1994-294. While the same tax preparer was employed as in prior years, the preparer interacted only with petitioner and relied on information petitioner provided. Even if she did not throughly review the returns, Ms. Edwards had previously at least signed a filing authorization for the returns before they were filed. The lack of any signature by Ms. Edwards for the 2013 return is

inconsistent with an agreement to file a joint return with petitioner for that year. Boyle v. Commissioner, T.C. Memo. 1994-294.

Several of the subsequent steps taken by Ms. Edwards also indicate that she did not consent to a joint return or believe that a joint return had been, or was being, filed on her behalf. Ms. Edwards was evidently aware of her responsibility to file a return for 2013. Almost two months after petitioner filed the purported joint return, Ms. Edwards sent a text message to further inquire about the possibility of filing a joint return.

Petitioner alleges that he informed Ms. Edwards that a joint return had been filed, and that he was keeping the tax refund money to compensate for her alleged failure to contribute to household expenses. He testified that his response of "talk to the Judge about it" reflected the parties' understanding that a joint return had been filed. Nevertheless, contemporary documents clearly establish that on April 15, 2014, Ms. Edwards requested an extension of time from the Internal Revenue Service to file her return for the taxable year 2013.

The Court finds that the April 5, 2014, text message and the entire record indicate that Ms. Edwards was unaware that petitioner had filed a joint return for 2013. Subsequent communications between attorneys for Ms. Edwards and petitioner indicate that Ms. Edwards likely believed that petitioner had filed a

separate return, on which he claimed their children as dependents.[2]  After their

divorce was finalized, Ms. Edwards filed her own separate return.  See

Springmann v. Commissioner, T.C. Memo. 1987-474, 54 T.C.M. (CCH) 592

(finding that no joint return was intended where taxpayer filed a separate return

after previously expressing willingness to file joint return).  We determine that Ms.

Edwards' course of conduct demonstrates that she did not actually agree to file a

joint return with petitioner, that she was unaware of the contents of the return

filed, and that she did not intend to be bound by the return her husband filed.  Shea

v. Commissioner, 780 F.2d at 567.  Accordingly petitioner's correct filing status

for the taxable year 2013 was married filing separately.  See sec. 1(d).

III.    Accuracy-Related Penalty

The Code imposes a 20% penalty upon the portion of any underpayment of

income tax that is attributable (among other things) to "negligence" or any

"substantial understatement of income tax."  Sec. 6662(a) and (b)(1) and (2).

"Negligence" is defined to include "any failure to make a reasonable attempt to

comply" with the provisions of the Code.  For individuals an understatement of

---

[2]Petitioner's counsel apparently contends that Ms. Edwards' testimony was contradictory on this point; counsel would interpret those emails to mean that she knew that a joint return was filed.  The Court reads them to just indicate that she thought he claimed the dependency exemptions; if she thought there was a joint return for 2013, this wouldn't be a negotiation point.

income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A).

Under section 7491(c), the Commissioner bears the burden of production with respect to the liability of an individual for any penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001); see also Rule 142(a)(1) (as to the increase in the penalty amount of $1,248 arising from respondent's amended answer). Respondent met this burden by showing that petitioner's correct filing status for 2013 was married filing separately, rather than married filing jointly. The understatement of income tax attributable to that improper filing status exceeds both $5,000 and 10% of the tax required to be shown on each return. The burden thus shifts to petitioners to establish that the penalty does not apply. See Higbee v. Commissioner, 116 T.C. at 447.

Section 6664(c)(1) provides that the accuracy-related penalty shall not be imposed with respect to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith" with respect to it when the return was filed. The decision as to whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor in

determining the existence of reasonable cause is the taxpayer's effort to ascertain her correct tax liability. Circumstances that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id.

We find that petitioner acted with reasonable cause and good faith with respect to his decision, on February 12, 2014, given the facts as they existed on that date, and the tacit consent doctrine. See Shea v. Commissioner, 780 F.2d at 567; Hennen v. Commissioner, 35 T.C. at 749. Ms. Edwards' email had suggested that the filing of a joint return, which would facilitate achieving the lowest overall combined tax, would be advantageous; this fact and the couple's past practice to file a return with a filing status of married filing jointly help to explain petitioner's action. We note that the return was filed before some of the events occurred which might have alerted petitioner to the fact that Ms. Edwards had not necessarily agreed to the filing of a joint return. He was married to Ms. Edwards during all of 2013, and they had filed joint tax returns for prior years. Although we have found that Ms. Edwards did not actually agree to file a joint return with petitioner for the taxable year 2013, their text messages indicate that her failure to do so was likely the result of poor communication and his failure to share the

refund absent a divorce court order to do so.  That failure arose because of the dispute regarding her alleged failure to pay her share of household expenses. Given the contentious nature of their ongoing divorce proceeding, this lapse in communication is understandable and does not necessarily indicate bad faith in complying with the tax laws.  Accordingly, the Court determines that petitioner is not liable for the accuracy-related penalty under section 6662(a).

To reflect the foregoing,

Decision will be entered for respondent as to the deficiency and for petitioner as to the accuracy-related penalty under section 6662(a).